FREDERICK PROVENCHER *v.* TOWN OF ENFIELD
(SC 17793)

Rogers, C. J., and Norcott, Katz, Zarella and Schaller, Js.

---

Argued September 18—officially released December 25, 2007

*Gabriel J. Jiran*, with whom, on the brief, was *Saranne P. Murray*, for the appellant (defendant).

*Stephen F. McEleney*, for the appellee (plaintiff).

KATZ, J. The plaintiff, Frederick Provencher, appealed from the judgment of the trial court rendered in favor of the defendant, the town of Enfield (town), claiming that the court improperly had concluded that General Statutes § 22-331 (a)[1] neither expressly nor implicitly confers a private cause of action affording declaratory relief for the town's failure to credit the plaintiff with certain years of service for purposes of the town's pension plan. The Appellate Court agreed with the plaintiff that, although § 22-331 (a) does not provide explicitly for a private cause of action, it does so implicitly, and accordingly reversed the judgment of the trial court. *Provencher* v. *Enfield*, 98 Conn. App. 271, 276–77, 908 A.2d 1126 (2006). Thereafter, this court granted the town's petition for certification to appeal on the issue of whether the Appellate Court improperly had concluded that the plaintiff was entitled to bring this action for declaratory relief. *Provencher* v. *Enfield*, 280 Conn. 950, 912 A.2d 483 (2006). We conclude that § 22-331 (a) does not create a private right of action and, accordingly, we reverse the judgment of the Appellate Court.

[1] General Statutes § 22-331 (a) provides: "In each municipality of the state having a population of more than twenty-five thousand which has adopted the provisions of chapter 113, or otherwise provided for a merit system for its employees, the chief of police, or such other appointing authority as the charter may designate, shall, appoint a full-time municipal animal control officer and such assistants as are deemed necessary, subject to the provisions of said chapter 113 or other merit system, to administer and enforce the laws relating to dogs or other domestic animals. Any person so appointed may be or become a member of the police department and for such purpose the legislative body of such municipality may waive any requirements as to age, sex, physical condition, education and training applicable to other members of the police department. Any person so appointed as a member of the police department shall be fully eligible to participate in the retirement system of such department."

The Appellate Court opinion sets forth the following relevant facts.[2] "The plaintiff is the town's animal control officer and also a sworn member of its police department. He was hired as assistant animal control officer on August 10, 1968, and promoted to his present position on April 13, 1969. At the time of his promotion, the plaintiff sought to participate in the [police] department's retirement system, but the town police chief blocked his participation. The plaintiff joined the town police union in 1975. After filing a grievance with the union in 1977, he was permitted to participate in the retirement system, but [did not] begin participating until November 12, 1980.[3] The plaintiff contacted the police chief, mayor and certain members of the town council in 1994 and 1995 in an attempt to receive retirement credit for the period from April 13, 1969, through November 11, 1980, but was unable to resolve the issue.

"On February 4, 2004, the plaintiff filed a three count complaint against the town, seeking a declaratory judgment, a writ of mandamus and equitable relief. After the case had been scheduled for trial, the town requested permission to file a motion for summary judgment pur-

[2] Because of the unusual procedural posture of this case, wherein the trial court granted the town's motion for summary judgment after a trial on the merits, and in the absence of any express reference, the basis for the Appellate Court's summary of the facts is not entirely clear. We note that, in its brief to this court, the town does not dispute any of these facts. The town, however, does assert that it had disputed in the trial court whether the evidence established that the plaintiff had qualified as a member of the police department, but it expressly disavows any dispute as to this fact for purposes of this appeal.

[3] In his statement of undisputed facts in support of his motion for summary judgment, the plaintiff asserts that he initially did not participate in the police retirement plan after the favorable resolution of his 1977 grievance because he would have had to continue paying into the Social Security plan while paying into the retirement plan. In 1978, the plaintiff filed a grievance challenging the requirement that he contribute both to the Social Security system and the pension plan. He did not, however, make a claim as part of this grievance that he was entitled to credit in the pension plan for his years of service retrospectively to 1969.

suant to Practice Book § 17-44.[4] The town's request was granted on March 31, 2005. The case then proceeded to trial on May 11 and 12, 2005. Thereafter, on July 20, 2005, the court granted the town's motion for summary judgment, concluding that § 22-331 (a) does not confer a private cause of action affording declaratory relief and that the plaintiff's action was barred by the six year contract statute of limitations pursuant to General Statutes § 52-576 (a)." *Provencher* v. *Enfield*, supra, 98 Conn. App. 272–73.

On appeal, the Appellate Court determined that, although there is no express private cause of action under § 22-331 (a) to enforce the mandate therein that a full-time municipal animal control officer "appointed as a member of the police department shall be fully eligible to participate in the retirement system of such department"; id., 274; there is nevertheless an implied private remedy. Id., 275–76. Accordingly, that court reversed the trial court's judgment and remanded the case for a new trial.[5] Id., 278. This certified appeal followed.

I

We begin our analysis with the well settled fundamental premise that there exists a presumption in Connecticut that private enforcement does not exist unless expressly provided in a statute. In order to overcome that presumption, the plaintiff bears the burden of dem-

[4] Practice Book § 17-44 provides in relevant part that "any party may move for a summary judgment at any time, except that the party must obtain the judicial authority's permission to file a motion for summary judgment after the case has been assigned for trial. . . ."

[5] The Appellate Court concluded that, although the trial court had held a full trial before rendering summary judgment, the case nevertheless should be remanded for a new trial before a different judge "to avoid even the possible suggestion that the court might have viewed the plaintiff's action in such negative terms when it rendered summary judgment after having conducted a full trial . . . ." *Provencher* v. *Enfield*, supra, 98 Conn. App. 277–78.

onstrating that such an action is created implicitly in the statute. *Asylum Hill Problem Solving Revitalization Assn.* v. *King,* 277 Conn. 238, 246–47, 890 A.2d 522 (2006). "In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff one of the class for whose . . . benefit the statute was enacted . . . ? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?" (Internal quotation marks omitted.) *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.,* 238 Conn. 216, 249, 680 A.2d 127 (1996), cert. denied, 520 U.S. 1103, 117 S. Ct. 1106, 137 L. Ed. 2d 308 (1997).

Consistent with the dictates of General Statutes § 1-2z, however, we do not go beyond the text of the statute and its relationship to other statutes unless there is some textual evidence that the legislature intended, but failed to provide expressly, a private right of action. Textual evidence that would give rise to such a question could include, for example, language granting rights to a discrete class without providing an express remedy or language providing a specific remedy to a class without expressly delineating the contours of the right.

"[T]he *Napoletano* test essentially applies our well established process of statutory interpretation, under which we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles govern-

ing the same general subject matter." (Internal quotation marks omitted.) *Asylum Hill Problem Solving Revitalization Assn.* v. *King,* supra, 277 Conn. 247 n.10. As with any issue of statutory construction, this court's review is plenary. *Teresa T.* v. *Ragaglia,* 272 Conn. 734, 742, 865 A.2d 428 (2005).

Finally, we note that "[i]n examining [the three *Napoletano*] factors, each is not necessarily entitled to equal weight. Clearly, these factors overlap to some extent with each other, in that the ultimate question is whether there is sufficient evidence that the legislature intended to authorize [this plaintiff] to bring a private cause of action despite having failed expressly to provide for one. See *Touche Ross & Co.* v. *Redington,* 442 U.S. 560, 576, 99 S. Ct. 2479, 61 L. Ed. 2d 82 (1979) (noting that these three factors traditionally are used to determine legislative intent). Therefore, although the [plaintiff] must meet a threshold showing that none of the three factors weighs against recognizing a private right of action, stronger evidence in favor of one factor may form the lens through which we determine whether the [plaintiff] satisf[ies] the other factors. Thus, the amount and persuasiveness of evidence supporting each factor may vary, and the court must consider all evidence that could bear on each factor. It bears repeating, however, that the [plaintiff] must meet the threshold showing that none of the three factors weighs against recognizing a private right of action." *Asylum Hill Problem Solving Revitalization Assn.* v. *King,* supra, 277 Conn. 247–48.

The stringency of the test is reflected in the fact that, since this court decided *Napoletano,* we have not recognized an implied cause of action despite numerous requests.[6] See *Rollins* v. *People's Bank Corp.,* 283 Conn.

---

[6] Indeed, since our decision in *Napoletano,* wherein this court adopted the three part test for implied causes of action under *Cort* v. *Ash,* 422 U.S. 66, 78, 95 S. Ct. 2080, 45 L. Ed. 2d 26 (1975), the United States Supreme Court has held that a federal statute would not give rise to an enforceable right unless the statute's text contained explicit rights creating language

136, 155, 925 A.2d 315 (2007); *Asylum Hill Problem Solving Revitalization Assn.* v. *King,* supra, 277 Conn. 259; *Eder Bros., Inc.* v. *Wine Merchants of Connecticut, Inc.,* 275 Conn. 363, 378–79 n.9, 880 A.2d 138 (2005); *Pane* v. *Danbury,* 267 Conn. 669, 680, 841 A.2d 684 (2004). As the trial court in the present case noted, it is a rare occasion that we will be persuaded that the legislature intended to create something as significant as a private right of action but chose not to express such an intent in the statute.[7]

We begin with § 22-331 (a), which provides in relevant part: "In each municipality of the state having a population of more than twenty-five thousand which has adopted the provisions of chapter 113, or otherwise provided for a merit system for its employees, the chief of police . . . shall . . . appoint a full-time municipal

and its structure manifested an intention to create a private remedy as well as a private right. See *Gonzaga University* v. *Doe,* 536 U.S. 273, 283–84, 122 S. Ct. 2268, 153 L. Ed. 2d 309 (2002) ("We have recognized that whether a statutory violation may be enforced through [42 U.S.C.] § 1983 is a different inquiry than that involved in determining whether a private right of action can be implied from a particular statute. . . . But the inquiries overlap in one meaningful respect—in either case we must first determine whether Congress intended to create a federal right. Thus we have held that [t]he question whether Congress . . . intended to create a private right of action [is] definitively answered in the negative where a statute by its terms grants no private rights to any identifiable class. . . . For a statute to create such private rights, its text must be phrased in terms of the persons benefited. . . . But even where a statute is phrased in such explicit rights-creating terms, a plaintiff suing under an implied right of action still must show that the statute manifests an intent to create not just a private right but also a private remedy." [Citations omitted; internal quotation marks omitted.]).

[7] It is important to clarify, however, that by acknowledging an implied right of action in the face of legislative silence, the court is *not* intruding on the legislative power. Rather, based on some ambiguity in the text, the court is seeking to ascertain and give effect to legislative intent as to a private right of action by going beyond the words of the statute "to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Pane* v. *Danbury,* supra, 283 Conn. 141.

animal control officer and such assistants as are deemed necessary, subject to the provisions of said chapter 113 or other merit system, to administer and enforce the laws relating to dogs or other domestic animals. Any person so appointed may be or become a member of the police department and for such purpose the legislative body of such municipality may waive any requirements as to age, sex, physical condition, education and training applicable to other members of the police department. Any person so appointed as a member of the police department shall be fully eligible to participate in the retirement system of such department." It is uncontested that § 22-331 (a) does not provide expressly for a private cause of action. Therefore, we turn to the three-pronged *Napoletano* test.

The trial court determined, and the Appellate Court agreed, that the plaintiff was a member of the class intended to benefit from the statute.[8] *Provencher* v. *Enfield*, supra, 98 Conn. App. 275. The town does not contend otherwise. Rather, the town emphasizes that the statute only makes animal control officers *eligible* to participate in the police department retirement system and any benefits must be determined by the terms of the applicable pension plan.

We note that our cases have not addressed clearly the question of whether the class to be benefited is to be determined solely by reference to the particular provision on which the alleged implied action arises or

---

[8] The Appellate Court reported that the town had agreed that the plaintiff is a member of the class benefited by § 22-331. *Provencher* v. *Enfield*, supra, 98 Conn. App. 275. As we have noted previously; see footnote 2 of this opinion; although the town contends in its brief to this court that it had challenged at trial whether the plaintiff was indeed a member of the police department, because this is an appeal of the decision on the motion for summary judgment, the town does not challenge the trial court's finding for purposes of the appeal.

by reference to that provision viewed in the context of the broader statutory scheme of which it is a part. Compare *Rollins* v. *People's Bank Corp.*, supra, 283 Conn. 143–45 (analyzing specific statutes on which cause of action allegedly arose) and *Asylum Hill Problem Solving Revitalization Assn.* v. *King*, supra, 277 Conn. 249 (same) with *Eder Bros., Inc.* v. *Wine Merchants of Connecticut, Inc.*, supra, 275 Conn. 378 (analyzing statutory scheme), *Pane* v. *Danbury*, supra, 267 Conn. 679–80 (same) and *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, supra, 238 Conn. 250 (same). In the present case, our inquiry under prong one is further complicated by the question of whether the relevant statutory scheme is the one in which § 22-331 is located, chapter 435, entitled "Dogs and Other Companion Animals. Kennels and Pet Shops," or the one to which § 22-331 (a) expressly refers, chapter 113, entitled "Municipal Employees," or both. Indeed, this latter question bears on our application of prongs two and three of the *Napoletano* test as well. See *Asylum Hill Problem Solving Revitalization Assn.* v. *King*, supra, 247–48 (recognizing that prongs "overlap to some extent with each other"). Section 22-331 benefits two classes: first, neglected or mistreated companion animals benefit from the protection provided to them by virtue of the mandate that municipalities hire sufficient animal control officers; second, municipal animal control officers benefit from their eligibility for the police department retirement plan should they become members of the department. Although § 22-331 (a) does not entitle the plaintiff to specific benefits, a point we explore later in our analysis, because it affords persons like him the benefit of eligibility for the pension plan, we deem him a member of the class intended to benefit from the statute. Accordingly, we conclude that the first factor, requiring that there be "an unmistakable focus on the benefited class"; (internal quotation marks omit-

ted) *Gonzaga University* v. *Doe*, 536 U.S. 273, 284, 122 S. Ct. 2268, 153 L. Ed. 2d 309 (2002); is satisfied.

With regard to the second *Napoletano* factor, whether there is any indication, express or implied, of the legislature's intent to create or deny a private cause of action, we examine the text of the statute and its relationship to the broader statutory scheme.

Turning first to the statute at issue, we make several observations. Section 22-331 does not suggest entitlement to any specific relief, but, rather, it provides only that the plaintiff is *eligible* to participate in the police department retirement system. As a general matter, however, eligibility expressly is conditioned upon several predicate acts, at least some of which clearly are discretionary: first, the municipality must have "adopted the provisions of chapter 113, or otherwise provided for a merit system for its employees"; General Statutes § 22-331 (a); second, the animal control officer "may . . . become a member of the police department" if he or she is not one already; General Statutes § 22-331 (a); and finally, "for such purpose the legislative body of such municipality may waive any requirements as to age, sex, physical condition, education and training applicable to other members of the police department."[9] General Statutes § 22-331 (a); see *Office*

---

[9] Both the text of the statute and its legislative history suggest that the animal control officer's status as a member of the police department is discretionary. We note the contrast in the text between the typically mandatory language that municipalities with a certain population "shall" appoint an animal control officer and the typically permissive language of "may" with respect to the officer's status as a member of the police department. We also note that the original version of the bill underlying the Public Act that added the language at issue, as presented to the committee on agriculture, more clearly mandated equivalent rights and benefits for animal control officers as members of the police department. See Senate Bill No. 255, § 4 ("In any town, city or borough having a population of twenty-five thousand or more the chief of police or similar appointing authority shall appoint a full time warden, who *shall be or become* a member of the police department and other personnel deemed necessary [to enforce the laws relating to dogs]. *The manner of appointment, salary rate and other terms of employment*

*of Consumer Counsel* v. *Dept. of Public Utility Control,* 252 Conn. 115, 122, 742 A.2d 1257 (2000) ("[t]he word 'may,' unless the context in which it is employed requires otherwise, ordinarily does not connote a command"). Upon each of these conditions being satisfied, the animal control officer thereafter becomes *"eligible"* to participate in the retirement system. (Emphasis added.) General Statutes § 22-331 (a). The statutory provision, however, does not mandate enrollment in the retirement system upon eligibility; the officer apparently must elect to participate. Indeed, any rights or privileges regarding retirement benefits necessarily are determined by and dependent upon the terms and conditions imposed for participation under the applicable retirement system created by each individual municipality. In effect, therefore, it appears that § 22-331 (a) merely affords a municipal animal control officer what is tantamount to standing to make a claim under the municipality's retirement plan, i.e., a contract action or a grievance action in accordance with chapter 113 of the General Statutes, *if* there is such a plan and *if* the officer is otherwise eligible.

Moreover, because eligibility does not equate to service credit, and § 22-331 (a) does not grant automatically service credit under the terms of a pension plan for animal control officers, a determination that can be

*applicable to members of the police department shall apply to the warden,* except that any requirements as to age or physical condition of other members of the police department may be waived, and other requirements as to education, training, in the discretion of the chief of police and subject to the provisions of subsection [d] of this section [authorizing the commissioner to promulgate regulations pertaining to the training of dog wardens]. *Such warden shall have all of the rights of other members of the police department in any pension plan or social security.*" [Emphasis added.]). The emphasized text was changed to the language at issue in the current statute after the bill had been referred to the committee on appropriations, thus suggesting that the costs of such mandates weighed in favor of changing the proposed bill to confer greater discretion on municipalities as to the status of municipal animal control officers. See Public Acts 1963, No. 613, § 4.

made only upon consideration of the particular contract at issue, it is dubious that § 22-331 is a source of a legal obligation of anything other than qualification. In other words, § 22-331 does not define the level of the plaintiff's pension benefits, nor does it define the number of years of service credit to which he is entitled. The plaintiff's claim in this case and the relief he seeks are determined by the express provisions of the pension plan, not by § 22-331 (a). For example, if the town had no pension plan, or if the town's plan excluded years of service prior to 1980 in the calculation of service credit, he would not have a remedy in this case. The *only* way to determine whether the plaintiff was entitled to relief in this case would be to interpret the town's pension plan, a contract under our law. In short, there are contingencies external to the statute that interfere with, and indeed preclude, a court's ability to assess whether the statute itself has been violated, further undermining a conclusion that the statute provides an enforceable right. Compare *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, supra, 238 Conn. 218–19 n.2, 250–53 (concluding that cause of action was implied in Public Acts 1994, No. 94-235, which mandated filing by preferred provider networks with commission on hospitals and health care, enumerated specific information to be disclosed, specified consequence for failure to comply with certain requirements and defined material terms of statute such that statute could be applied uniformly).

It is without debate that the legislature could have added language to § 22-331 (a) to indicate that a private cause of action was indeed contemplated. In reviewing other statutes within the same chapter, it is apparent that the legislature was fully cognizant not only of the need for certain administrative remedies, which admittedly are not available to the plaintiff; see footnote 10 of this opinion; but also of the need for private causes of

action when it deemed them appropriate. For example, General Statutes § 22-351 (b) provides that any person who violates that statute "shall be liable to the owner [of a companion animal] in a civil action . . . ." General Statutes § 22-351a (b) contains similar language, and even specifies the character of the damages available to a plaintiff pursuing a cause of action. General Statutes § 22-355 (d) provides that "the person who claims to have sustained damage [under the statute] may institute a civil action against the town in which the damage was sustained for the recovery of such damage." General Statutes § 22-357 further provides that owners or keepers of dogs "shall be liable" in an action for damages specified under the statute. As we have recognized, the *Napoletano* analysis includes a review of "whether and how remedies were provided as an indication of the legislature's intent to confer a private right of action." *Asylum Hill Problem Solving Revitalization Assn.* v. *King*, supra, 277 Conn. 258. Although we are mindful that the aforementioned administrative and judicial remedies are intended to vindicate interests that differ markedly from retirement benefits, the presence of such remedies evinces that the legislature was not unmindful of such matters when drafting the scheme. In the present case, § 22-331 (a) does not provide *any* indication of a private remedy in contrast to several other statutes within chapter 435 that explicitly provide for private causes of action. This difference further is an indication that no private cause of action was intended under § 22-331 (a). Accordingly, the plaintiff has failed to demonstrate that prong two does not weigh against him.

Although this conclusion is fatal to the plaintiff's claim, we nonetheless address prong three of the *Napoletano* test because it overlaps to some extent with our reasoning in prong two and further bolsters our conclusion as to that prong. We must look not only to

the broad purpose of the scheme of which § 22-331 is a part, but also to the specific purpose evidenced by the choices made by the legislature as to how the particular provision would accomplish the overall goals of the scheme. Id., 258–59.

The Appellate Court determined that an implied remedy is consistent with the underlying purposes of the legislative scheme to imply such a private remedy for the plaintiff, assessing the underlying purposes of the legislative scheme as follows. "Section 22-331 (a) appears in title 22, chapter 435 of the General Statutes. The purpose of chapter 435 is to regulate dogs, other companion animals, kennels and pet shops. In furtherance of that purpose, § 22-331 (a) provides for the appointment of a municipal animal control officer and underscores the importance of that position by permitting the officer to become a member of the police department even if the officer lacks requirements as to age, sex, physical condition, education and training applicable to other members of the police department. . . . Section 22-331 (a) further strengthens the permitted status of a municipal animal control officer as a member of the police department by providing that the officer shall be fully eligible to participate in the retirement system of such department. . . . The underlying purposes of the legislative scheme indicate that the control of dogs and other companion animals is of such significance that a municipal animal control officer may have the status of a member of the police department, and, if so, is to be granted full eligibility in the department's retirement system." (Citations omitted; internal quotation marks omitted.) *Provencher* v. *Enfield,* supra, 98 Conn. App. 275–76. Although we agree generally with the Appellate Court's assessment of the legislature's rationale for § 22-331 (a), we disagree with its conclusion that this rationale compels the con-

clusion that it is consistent with the underlying purpose of the scheme to imply a private cause of action.[10]

The legislature expressly directed this provision to municipalities that have adopted, and therefore are governed by, chapter 113 and to those municipalities that have adopted their own merit plan. Chapter 113 contains the general provisions of the Municipal Employees

---

[10] In support of its holding that § 22-331 affords a private cause of action, the Appellate Court reasoned that the plaintiff otherwise would not have a means to enforce his rights. We previously have considered the existence of alternative remedies and procedures for the enforcement of a statute as strong, if not conclusive, evidence of legislative intent *not* to create additional implied remedies under the statute. See, e.g., *Asylum Hill Problem Solving Revitalization Assn.* v. *King*, supra, 277 Conn. 257–59 (no implied private right of action under state fair housing provision, General Statutes § 8-37cc [b], when statutory scheme vests oversight and enforcement in legislative and executive branches); *Eder Bros., Inc.* v. *Wine Merchants of Connecticut, Inc.*, supra, 275 Conn. 373–78 (no implied private right of action under Liquor Control Act when, with only one exception, statutory scheme vests enforcement of act in department of consumer protection).

The town contends that the Appellate Court improperly rejected its contention that the plaintiff had an administrative remedy through the department of agriculture. See General Statutes § 22-328 (authorizing commissioner of agriculture to enforce provisions of chapters 435, 436 and 436a); see also *Provencher* v. *Enfield*, supra, 98 Conn. App. 276–77 n.5. In our view, the legislative history of this enforcement provision indicates that, despite the broad scope of the commissioner's powers that, literally applied, would include the retirement benefits under § 22-331, the legislature did not intend for the commissioner to enforce retirement benefits for animal control officers. When what is now § 22-331 (a) was enacted; Public Acts 1963, No. 613, § 4; the enforcement provision under § 22-328 vested the commissioner with authority "to enforce all laws relating to dogs and all regulations made in pursuance of this chapter." General Statutes (Cum. Sup. 1963) § 22-328. The commissioner's enforcement powers were not expanded to "the provisions of chapters 435, 436 and 436a" until nineteen years later, under an act entitled "An Act Concerning Enforcement of Canine Control Laws." Public Acts 1982, No. 82-119, § 1. The legislature made no changes to § 22-331 at that time, and there is nothing to suggest that the legislature used such broad language with the intention of authorizing the commissioner to enforce potential claims for retirement benefits. Therefore, we disagree with the town that such an administrative remedy would have been available to the plaintiff. For all of the reasons set forth in this opinion, however, this determination does not in and of itself compel the conclusion that the legislature intended § 22-331 (a) to afford the plaintiff a remedy.

Relations Act; General Statutes §§ 7-460 through 7-479; which acknowledges and protects the collective bargaining process. The fact that members of police departments generally are parties to collective bargaining agreements undoubtedly was understood by the legislature. See *Santana* v. *Hartford*, 282 Conn. 19, 21, 918 A.2d 267 (2007); *Genesky* v. *East Lyme*, 275 Conn. 246, 267, 881 A.2d 114 (2005); *Shortt* v. *New Milford Police Dept.*, 212 Conn. 294, 297, 562 A.2d 7 (1989); *Krassner* v. *Ansonia*, 100 Conn. App. 203, 205, 917 A.2d 70 (2007). Disputes under collective bargaining agreements for retirement plans undoubtedly are governed by procedures thereunder, as well as by the Municipal Employees Relations Act. Disputes arising under merit plans for those municipalities that have not adopted chapter 113 would be governed by general contract principles. Given these contractual based remedies, it seems entirely inconsistent to provide animal control officers who have become members of the police department with a private cause of action unlimited by any statute of limitations while imposing contract based procedural constraints on all other members of the police department. Section 22-331 (a) indicates a clear intent to prescribe *equal* treatment for animal control officers who become members of the police department with other members of the police department, not superior.

We do not speak, however, to whether the plaintiff in the present case necessarily would be able to obtain relief under the town's collective bargaining procedures. Indeed, the question before us requires that we view the statute globally for the affected class, not that we consider the vagaries of the circumstances of this individual plaintiff.[11]

[11] Finally, as we explained recently in another case in which a plaintiff attempted to assert an implied action against a municipality, there may be a more fundamental reason that prevents the plaintiff from bringing this claim against the city. "[T]he general rule developed in our case law is that a municipality is immune from liability . . . unless the legislature has enacted a statute abrogating that immunity." (Internal quotation marks omit-

Therefore, the plaintiff has not met his burden of establishing that none of the three *Napoletano* factors militates against the recognition of a private right of action under § 22-331 and that the factors, when viewed together, demonstrate that the legislature implicitly created such an action. Accordingly, the Appellate Court's judgment must be reversed.

II

The plaintiff raises two alternate grounds for affirmance that he claims would allow this court to affirm the judgment of the Appellate Court notwithstanding our decision that § 22-331 (a) does not provide a private cause of action. Both relate to the trial court's alleged improper grant of the town's motion for summary judgment on the ground that the plaintiff's contract action was barred by the six year statute of limitations: first, the plaintiff claims that there were still issues of material fact in dispute; second, the plaintiff asserts that summary judgment is improper after a full trial. We disagree that either of these grounds can sustain the Appellate Court's judgment.

We review the plaintiff's claims under well established rules. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

ted.) *Pane* v. *Danbury*, supra, 267 Conn. 680–81. We note that the town did not raise the special defense of governmental immunity, and consequently, it was unnecessary for the plaintiff in the present case to point to any statutory provision expressly abrogating governmental immunity from claims arising under § 22-331. We acknowledge nonetheless that, even if we were to assume that § 22-331 was intended primarily to advance the retirement interests of government employees within the meaning of *Napoletano*, the plaintiff's claim could be barred by governmental immunity. Because we conclude that the three *Napoletano* factors militate against the recognition of a private right of action under § 22-331 (a), we need not decide that issue.

as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . The test is whether the party moving for summary judgment would be entitled to a directed verdict on the same facts. . . . Our review of the trial court's decision to grant the [town's] motion for summary judgment is plenary." (Citations omitted; internal quotation marks omitted.) *Leisure Resort Technology, Inc.* v. *Trading Cove Associates,* 277 Conn. 21, 30–31, 889 A.2d 785 (2006).

## A

Taking the issues in order, the plaintiff first asserts that the trial court improperly considered issues of fact when rendering its decision on the motion for summary judgment. Specifically, he claims that the trial court improperly concluded that his claim arose out of events that had taken place between ten and thirty-five years earlier. Additionally, he claims that the statement in a footnote in the trial court's memorandum of decision that, "based on the evidence submitted, [the town's jurisdictional claim of failure to exhaust administrative remedies] cannot be substantiated" demonstrated that it had decided a contested question of fact. Both claims fail.

The undisputed evidence presented to the trial court on the motion for summary judgment, along with the plaintiff's complaint, established that the breach of contract in this case occurred, if at all, as early as 1969. At that time, the plaintiff approached the town's police chief to request that he be allowed to participate in the pension plan. Although his request was denied, the plaintiff did not pursue the matter further at that time,

but, rather, he continued to work for the town without accruing the service credit to which he claims to be entitled in this case. In 1977, he filed a grievance claiming the right to participate in the pension plan, on which he prevailed. In 1980, the plaintiff began making contributions to, and was permitted membership in, the retirement plan. Although he did not receive credit for his prior service at that time, he did not commence suit claiming entitlement to that service credit until January, 2004. These facts, recited in the trial court's memorandum of decision, essentially repeat the allegations in the plaintiff's complaint and do not rely on evidence adduced at trial. The truth of these statements is irrefutable. See *Edmands* v. *CUNO, Inc.*, 277 Conn. 425, 454, 892 A.2d 938 (2006) ("[F]actual allegations contained in pleadings upon which the case is tried are considered judicial admissions and hence irrefutable as long as they remain in the case. . . . An admission in pleading dispenses with proof, and is equivalent to proof." [Internal quotation marks omitted.]); *Ferreira* v. *Pringle*, 255 Conn. 330, 345, 766 A.2d 400 (2001) (same).

Moreover, the reference in the footnote essentially rejecting the town's jurisdictional claim that the plaintiff had failed to exhaust his administrative remedies neither demonstrates that the trial court considered evidence adduced *at trial* as a basis for its decision granting summary judgment nor is material. First, the statement simply could have referred to evidence, or the lack thereof, submitted in support of the town's motion for summary judgment. Second, the court's conclusion indisputably inured to the plaintiff's favor. Finally, we note that the trial court expressly prefaced its statement with the proviso that its conclusion as to the statute of limitations was dispositive.

B

Additionally, the plaintiff claims that, because the trial court had granted the town's motion for summary

judgment after the close of evidence, the Appellate Court's judgment can be sustained on the alternate ground that it was improper for the trial court to decide the summary judgment motion after a trial on the merits. At the outset, we acknowledge that "[t]he motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." *Wilson* v. *New Haven*, 213 Conn. 277, 279, 567 A.2d 829 (1989). The fact that the ultimate purpose of summary judgment was not served, however, is not a reason to overturn the judgment and remand the case for a new trial. This consequence would elevate form over substance and essentially only compound the waste of resources.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.