FRANK GERARDI *v.* CITY OF BRIDGEPORT ET AL.
(SC 18318)

STEPHEN VITKA *v.* CITY OF BRIDGEPORT ET AL.
(SC 18322)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille, Zarella and McLachlan, Js.

Argued September 22, 2009—officially released January 5, 2010

*Thomas J. Weihing*, with whom, on the brief, were *John T. Bochanis* and *Janice L. Rosenfeld*, for the appellants (plaintiff in each case).

*John P. Bohannon, Jr.*, for the appellees (defendants in each case).

*Opinion*

VERTEFEUILLE, J. These appeals arise from separate actions brought by the plaintiffs, Frank Gerardi and Stephen Vitka, against the defendants, their employer, the city of Bridgeport (city), and Brian P. Rooney, the fire chief of the city, challenging the defendants' effort to discipline the plaintiffs, who are city fire inspectors, for improper job performance, which was detected through the defendants' use of global positioning system devices (GPS devices) without the plaintiffs' knowledge. The plaintiffs now appeal[1] from the

---

[1] The plaintiffs appealed from the judgments of the trial court to the Appellate Court, and we transferred the appeals to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. We later consolidated the appeals for purposes of oral argument.

judgments of dismissal rendered in favor of the defendants for the plaintiffs' failure to exhaust administrative remedies as provided in the collective bargaining agreement between the union that represented the plaintiffs and the city. We affirm the judgments of the trial court, but do so on reasoning different from that of the trial court.

The record reveals the following undisputed facts and procedural history. As city fire inspectors, the plaintiffs' duties included inspecting buildings located throughout the city for compliance with applicable fire codes. The city provided the plaintiffs with city owned vehicles to use in the performance of their duties. In May, 2007, the city acquired new vehicles, and, without advising the plaintiffs, installed GPS devices in each of the vehicles in order to monitor electronically the fire inspectors' movement and location while the vehicles were in use. After monitoring the plaintiffs' activities through the use of the GPS devices and examining the information gathered by the devices, the city brought disciplinary actions against the plaintiffs relating to the performance of their duties. The plaintiffs then brought the actions underlying these appeals. They alleged that the defendants had violated General Statutes § 31-48d,[2] which prohibits an employer from electronically moni-

---

[2] General Statutes § 31-48d provides in relevant part: "(b) (1) Except as provided in subdivision (2) of this subsection, each employer who engages in any type of electronic monitoring shall give prior written notice to all employees who may be affected, informing them of the types of monitoring which may occur. Each employer shall post, in a conspicuous place which is readily available for viewing by its employees, a notice concerning the types of electronic monitoring which the employer may engage in. Such posting shall constitute such prior written notice. . . .

"(c) The Labor Commissioner may levy a civil penalty against any person that the commissioner finds to be in violation of subsection (b) of this section, after a hearing conducted in accordance with sections 4-176e to 4-184, inclusive. The maximum civil penalty shall be five hundred dollars for the first offense, one thousand dollars for the second offense and three thousand dollars for the third and each subsequent offense. . . ."

toring an employee's activities without prior notice to the employee, and they sought temporary and permanent injunctive relief and money damages.[3]

The defendants thereafter filed motions to dismiss both actions, claiming that the trial court lacked subject matter jurisdiction over the claims because the plaintiffs had failed to exhaust the available administrative remedy provided in the applicable collective bargaining agreement. The plaintiffs objected to the motions, claiming that General Statutes § 31-51bb[4] permitted them to pursue their actions without first exhausting the available administrative remedy because § 31-48d authorizes a cause of action against the city. The trial court granted the motions to dismiss and rendered judgments dismissing the actions, and these appeals followed.

On appeal, the plaintiffs claim that, in granting the defendants' motions to dismiss, the trial court improperly concluded that § 31-48d did not apply to the plaintiffs because the defendants' electronic monitoring of the plaintiffs did not take place on the employer's premises as required under § 31-48d (a) (3). That conclusion led the trial court to dismiss both actions because, in the absence of an independent statutory cause of action,

---

[3] The plaintiffs also alleged that the defendants had violated General Statutes § 31-48b (b) regarding the prohibition of monitoring devices "in areas designed for the health or personal comfort" of employees. The trial court determined that § 31-48b does not apply to the facts of the present case. The plaintiffs do not challenge the trial court's conclusion on this matter and, instead, now concede that § 31-48b does not apply to the facts of the present case.

[4] General Statutes § 31-51bb provides as follows: "No employee shall be denied the right to pursue, in a court of competent jurisdiction, a cause of action arising under the state or federal Constitution or under a state statute solely because the employee is covered by a collective bargaining agreement. Nothing in this section shall be construed to give an employee the right to pursue a cause of action in a court of competent jurisdiction for breach of any provision of a collective bargaining agreement or other claims dependent upon the provisions of a collective bargaining agreement."

the plaintiffs could not rely on § 31-51bb to excuse their failure to exhaust administrative remedies. The plaintiffs also contend, therefore, that the trial court improperly concluded that they did not exhaust their administrative remedies because the plaintiffs do satisfy the requirements of § 31-51bb. In response, the defendants assert that the trial court properly dismissed the plaintiffs' complaints for lack of subject matter jurisdiction because § 31-48d does not establish a private cause of action for violations of the statute. The plaintiffs, in turn, claim that this court should not consider what is, in effect, an alternate ground to affirm because it was not raised in the trial court.

We first set forth certain procedures applicable to alternate grounds for affirmance. Practice Book § 63-4 (a) (1) provides in relevant part: "If any appellee wishes to (A) present for review alternate grounds upon which the judgment may be affirmed . . . that appellee shall file a preliminary statement of issues within twenty days from the filing of the appellant's preliminary statement of the issues. . . ." Practice Book § 60-5 also provides in relevant part that "[t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. . . ."

Although the defendants did not explicitly characterize this claim as an alternate ground for affirmance, they raised the claim in their briefs filed in this court and the plaintiffs had an adequate opportunity to respond, and did so, in their reply briefs. "Given the fact that neither party would be prejudiced by our doing so, we treat [this claim] as if [it] had been properly raised as . . . [an] alternate [ground] for affirmance." (Internal quotation marks omitted.) *Stepney Pond Estates, Ltd.* v. *Monroe*, 260 Conn. 406, 423 n.19, 797 A.2d 494 (2002).

Moreover, the defendants' alternate ground for affirmance, that § 31-48d does not create a private right

of action for a violation of that statute, implicates the trial court's subject matter jurisdiction, and therefore may be raised at any time during the proceedings. See, e.g., *Coldwell Banker Manning Realty, Inc.* v. *Cushman & Wakefield of Connecticut, Inc.*, 293 Conn. 582, 610, 980 A.2d 819 (2009) (addressing alternate ground to affirm even though not raised at trial because it implicated court's subject matter jurisdiction); see also *MBNA America Bank, N.A.* v. *Boata*, 283 Conn. 381, 390, 926 A.2d 1035 (2007) ("a claim that a court lacks subject matter jurisdiction to hear a case . . . may be raised at any time"); cf. *Neiman* v. *Yale University*, 270 Conn. 244, 253, 851 A.2d 1165 (2004) (holding that trial court properly granted motion to dismiss for lack of subject matter jurisdiction because plaintiff had failed to exhaust remedies available through exclusive grievance procedure). We agree with the defendants on the merits of their alternate ground for affirmance, and therefore we affirm the judgment of the trial court.

We begin our analysis by setting forth the appropriate standard of review. The resolution of these appeals requires us to interpret § 31-48d. "Well settled principles of statutory interpretation govern our review." *Viera* v. *Cohen*, 283 Conn. 412, 420–21, 927 A.2d 843 (2007). This issue presents a question of statutory interpretation over which our review is plenary. See, e.g., *Burton* v. *Commissioner of Environmental Protection*, 291 Conn. 789, 798, 970 A.2d 640 (2009). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after

examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Windels* v. *Environmental Protection Commission*, 284 Conn. 268, 294–95, 933 A.2d 256 (2007).

In response to the defendants' claim that § 31-48d does not provide a cause of action for a violation of that statute, the plaintiffs do not assert that § 31-48d expressly provides for such a private cause of action. Instead, the plaintiffs claim only that the language of § 31-48d does not *prohibit* a private cause of action under that statute. We therefore must determine whether there is an *implied* cause of action in § 31-48d.

"We begin our analysis with the well settled fundamental premise that there exists a presumption in Connecticut that private enforcement does not exist unless expressly provided in a statute. In order to overcome that presumption, the [plaintiffs bear] the burden of demonstrating that such an action is created implicitly in the statute." *Provencher* v. *Enfield*, 284 Conn. 772, 777–78, 936 A.2d 625 (2007). "In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff one of the class for whose . . . benefit the statute was enacted . . . ? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?"

(Internal quotation marks omitted.) *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, 238 Conn. 216, 249, 680 A.2d 127 (1996), cert. denied, 520 U.S. 1103, 117 S. Ct. 1106, 137 L. Ed. 2d 308 (1997).

"Consistent with the dictates of . . . § 1-2z, however, we do not go beyond the text of the statute and its relationship to other statutes unless there is some textual evidence that the legislature intended, but failed to provide expressly, a private right of action. Textual evidence that would give rise to such a question could include, for example, language granting rights to a discrete class without providing an express remedy or language providing a specific remedy to a class without expressly delineating the contours of the right. . . .

"Finally, we note that [i]n examining [the three *Napoletano*] factors, each is not necessarily entitled to equal weight. Clearly, these factors overlap to some extent with each other, in that the ultimate question is whether there is sufficient evidence that the legislature intended to authorize [these plaintiffs] to bring a private cause of action despite having failed expressly to provide for one. . . . Therefore, although the [plaintiffs] must meet a threshold showing that none of the three factors weighs against recognizing a private right of action, stronger evidence in favor of one factor may form the lens through which we determine whether the [plaintiffs] satisf[y] the other factors. Thus, the amount and persuasiveness of evidence supporting each factor may vary, and the court must consider all evidence that could bear on each factor. It bears repeating, however, that the [plaintiffs] must meet the threshold showing that none of the three factors weighs against recognizing a private right of action. . . .

"The stringency of the test is reflected in the fact that, since this court decided *Napoletano*, we have not recognized an implied cause of action despite numerous

requests."[5] (Citations omitted; internal quotation marks omitted.) *Provencher* v. *Enfield,* supra, 284 Conn. 778–79.

We turn now to the explicit, operative language of § 31-48d (b) (1), which establishes a new obligation on the part of an employer: "[E]ach employer who engages in any type of electronic monitoring shall give prior written notice to all employees who may be affected, informing them of the types of monitoring which may occur. Each employer shall post, in a conspicuous place which is readily available for viewing by its employees, a notice concerning the types of electronic monitoring which the employer may engage in. Such posting shall constitute such prior written notice." Thus, the language of the statute imposes on an employer a statutory requirement to notify employees of the existence of any electronic monitoring as defined in the statute.

The first prong of the *Napoletano* test is whether the plaintiffs are within the class of persons intended to be protected by the statute. An " '[e]mployee' " is defined in the statute as "any person who performs services for an employer in a business of the employer, if the

---

[5] See *Burton* v. *Commissioner of Environmental Protection,* supra, 291 Conn. 797–800 (rejecting plaintiff's claim that General Statutes § 22a-20 implicitly provides private right of action); *Provencher* v. *Enfield,* supra, 284 Conn. 777–90 (rejecting plaintiff's claim that General Statutes § 22-331 [a] implicitly provides private right of action); *Rollins* v. *People's Bank Corp.,* 283 Conn. 136, 137–38, 925 A.2d 315 (2007) (refusing to find that General Statutes § 51-199b [d] implicitly provides private right of action for customer against financial institution for disclosure of customer's financial records in violation of General Statutes § 36a-42 or General Statutes § 36a-43); *Asylum Hill Problem Solving Revitalization Assn.* v. *King,* 277 Conn. 238, 259, 890 A.2d 522 (2006) (rejecting plaintiff's claim that General Statutes § 8-37cc [b] implicitly provides private right of action); *Eder Bros., Inc.* v. *Wine Merchants of Connecticut, Inc.,* 275 Conn. 363, 378, 880 A.2d 138 (2005) (rejecting plaintiffs' claim that Liquor Control Act, General Statutes § 30-1 et seq., implicitly provides private right of action); *Pane* v. *Danbury,* 267 Conn. 669, 680, 841 A.2d 684 (2004) (rejecting plaintiff's claim that Freedom of Information Act, General Statutes § 1-200 et seq., implicitly provides private right of action).

employer has the right to control and direct the person as to (A) the result to be accomplished by the services, and (B) the details and means by which such result is accomplished . . . ." General Statutes § 31-48d (a) (2). An " '[e]mployer' " is defined as "any person, firm or corporation, including the state and any political subdivision of the state which has employees . . . ." General Statutes § 31-48d (a) (1). As fire inspectors employed by the city, the plaintiffs are clearly within the class of persons who were intended to be protected by the statute if the statute is applicable to electronic monitoring in employer owned vehicles, an issue we need not decide for purposes of this analysis. Accordingly, the plaintiffs have satisfied the first prong of the *Napoletano* test.

The second *Napoletano* factor is whether there is any indication, express or implied, of the legislature's intent to create or to deny a private cause of action. We therefore must consider the text of § 31-48d and its relationship to the broader statutory scheme. The most pertinent portion of the statute for purposes of this analysis is subsection (c), which provides: "The Labor Commissioner may levy a civil penalty against any person that the commissioner finds to be in violation of subsection (b) of this section, after a hearing conducted in accordance with sections 4-176e to 4-184, inclusive. The maximum civil penalty shall be five hundred dollars for the first offense, one thousand dollars for the second offense and three thousand dollars for the third and each subsequent offense." General Statutes § 31-48d (c). This subsection of the statute, which is the only portion that addresses violations of the statute, authorizes the state labor commissioner to levy civil penalties for violations of the statute after a hearing conducted in accordance with General Statutes §§ 4-176e to 4-184. Sections 4-176e to 4-184, which are sections of

the Uniform Administrative Procedure Act, establish procedures for administrative agency hearings.

Nothing in § 31-48d (c) entitles employees who have been subjected to electronic monitoring without notice to any specific relief or remedy. Indeed, the statute does not even provide a mechanism by which an employee can report its employer to the labor commissioner for having violated the statute. Nor does § 31-48d provide any other administrative remedy for the employee. Instead, the statute provides solely for a penalty that the labor commissioner can impose once a violation of the section has been determined through an administrative hearing. Section 31-48d (c) therefore clearly delegates all powers related to violations of this statute to the labor commissioner. Accordingly, we conclude that the legislature intended the enforcement mechanism of § 31-48d to be limited to proceedings before the labor commissioner, and not to allow employees to bring civil actions. See *Eder Bros., Inc.* v. *Wine Merchants of Connecticut, Inc.*, supra, 275 Conn. 373–74 (rejecting plaintiffs' claim of private right of action under Liquor Control Act when act delegates all enforcement authority exclusively to department of consumer protection).

Finally, we note that if the legislature had intended to provide the private remedy of a civil cause of action for enforcement of § 31-48d, it easily could have added language to § 31-48d to indicate that such an action was authorized and intended. Other statutes within chapter 557 of the General Statutes governing employment regulation, of which § 31-48d is a part, clearly provide for the remedy of a civil action. For example, General Statutes § 31-51m (c) explicitly provides that "[a]ny employee who is discharged, disciplined or otherwise penalized by his employer . . . may, after exhausting all available administrative remedies, bring a civil action, within ninety days of the date of the final administrative deter-

mination or within ninety days of such violation, whichever is later, in the superior court . . . ." Similarly, General Statutes § 31-57g (c) (1) provides that any employee of a food or beverage service provider at Bradley International Airport whose employment has been terminated without just cause or in violation of any of the other provisions of § 31-57g "may bring an action in Superior Court against the awarding authority, the terminated contractor or the successor contractor, jointly or severally, to recover damages for any violation of the obligations imposed under this section."

We conclude, therefore, that the plaintiffs have failed to satisfy the second prong of the *Napoletano* test, and, further, that this failure is fatal to the plaintiffs' claim that § 31-48d implicitly establishes a private cause of action authorizing the plaintiffs to bring an action for a violation of the statute. See *Provencher* v. *Enfield*, supra, 284 Conn. 786 (concluding that plaintiff's failure to meet second prong of *Napoletano* test was fatal to his claim). Accordingly, we affirm the judgments of the trial court on the alternate ground that the court lacked subject matter jurisdiction because, in the absence of a private right of action under § 31-48d, the plaintiffs must exhaust the administrative remedies included in the collective bargaining agreement before bringing a civil action.

The judgments are affirmed.

In this opinion the other justices concurred.