******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ANTHONY MARIANO ET AL. *v.* THE HARTLAND
BUILDING AND RESTORATION
COMPANY ET AL.
(AC 37710)

DiPentima, C. J., and Mullins and Flynn, Js.

*Argued April 13—officially released October 11, 2016*

(Appeal from Superior Court, judicial district of
Waterbury, Shapiro, J.)

*Christopher A. Klepps*, with whom was *Donald W. Doeg*, for the appellant (apportionment defendant Close, Jensen and Miller, P.C.).

*James E. Coyne*, for the appellee (intervening plaintiff).

*Opinion*

DiPENTIMA, C. J. The apportionment defendant Close, Jensen and Miller, P.C. (Close), appeals from the summary judgment rendered in favor of the intervening plaintiff, Brunalli Construction Company (Brunalli), on Close's counterclaim.[1] On appeal, Close claims that the trial court erred in (1) concluding that Brunalli carried its initial burden of proving the nonexistence of any genuine issue of material fact and (2) determining that the affidavit submitted by Close in support of its opposition to Brunalli's motion for summary judgment failed to demonstrate the existence of an issue of material fact. We agree with the first claim of Close and therefore reverse the judgment of the trial court.[2]

The record before the court, viewed in the light most favorable to Close as the nonmoving party, reveals the following facts and procedural history. The underlying action arose from the June 15, 2010 collapse of the Salem Bridge in Naugatuck, which occurred as work was underway to demolish the bridge. At the time of the incident, Anthony Mariano (Anthony) was employed by Brunalli, which had entered into a contract with the state to serve as the general contractor on the project to demolish the Salem Bridge (prime contract). Nearly a year after the collapse, in July, 2011, the plaintiffs, Anthony and Shirley Mariano (Marianos), initiated an action against the defendants The Hartland Building & Restoration Company (Hartland) and Witch Enterprises, Inc., both of which were Brunalli's subcontractors, alleging that Anthony had sustained personal injuries as a result of the collapse. Shortly after commencing this action, Brunalli filed an intervening complaint, pursuant to General Statutes § 31-293, seeking reimbursement for the workers' compensation benefit payments it paid to Anthony as a result of his injuries. In late 2011, Hartland filed an apportionment complaint against Close[3] and Martin J. Page (Martin), engineers associated with the Salem Bridge project.[4] The Marianos, then, brought a direct claim against Close and Martin.

On May 10, 2012, Close filed a counterclaim against Brunalli. Relevant to this appeal, Close alleged that, pursuant to "its agreement" with the state, it reviewed the demolition plan and a temporary support plan that Brunalli submitted to the state. According to Close, Brunalli and/or its subcontractors negligently performed their work in connection with the demolition of the Salem Bridge. Close also alleged that Brunalli, by "failing to adhere to the . . . demolition plan and/ or the . . . temporary support plan and/or failing to ensure that its subcontractors adhered to the . . . demolition plan and/or the . . . temporary support plan was the active and primary cause of the damages, if any, suffered by [the Marianos] and superseded any passive negligence on the part of [Close], if any." Thus,

because of Brunalli's various purported failures, Close alleged that Brunalli had a common-law duty to indemnify and hold harmless Close to the extent that the Marianos prevailed on their claims against Close.

On August 30, 2012, Brunalli filed its answer and special defense to Close's counterclaim. Pertinent to this appeal, Brunalli denied any negligence and claimed that Close's counterclaim was barred by General Statutes § 31-284 (a),[5] the exclusivity provision of the Workers' Compensation Act (act), General Statutes § 31-275 et seq.

On May 24, 2013, Brunalli filed a motion for summary judgment on Close's counterclaim for indemnification. It argued that Close's counterclaim failed, as a matter of law, because no independent legal duty existed between Brunalli and Close. In support of the motion for summary judgment, Brunalli attached an affidavit from James Needham, vice president for Brunalli. Needham averred that Brunalli and Close "never entered into a written agreement" concerning the Salem Bridge project. Thus, in its memorandum of law in support of its motion for summary judgment, Brunalli argued that Close's allegations in its counterclaim had "fail[ed] to establish the independent legal duty necessary to overcome the exclusivity provision of the [act]."

Approximately six weeks later, on July 8, 2013, pursuant to Practice Book § 10-60,[6] Close filed a request for leave to amend its counterclaim with the amended counterclaim appended (amended counterclaim). Close alleged that under the terms of Brunalli's prime contract with the state, Brunalli was obligated to perform its work with due care. Moreover, Close alleged in the amended counterclaim that on or about April, 2008, Close and the state had entered into a consulting agreement "whereby [Close] agreed to act as the state's consulting liaison engineer with regard to state and local bridge programs," including the Salem Bridge project. According to Close, both the consulting agreement, which was between the state and Close, and the prime contract, which was between Brunalli and the state, "incorporate[d] by reference the state . . . Department of Transportation standard for roads, bridges and incidental construction [standard specifications]." Thus, Close alleged that the standard specifications established that Brunalli had a duty to "indemnify and save harmless, the [s]tate, the Department [of Transportation] and all of its officers, employees, and *agents* from all suits, actions or claims of any character, name or description brought for or on account of any injury or damage caused to any person or property as a result of, in connection with, or pursuant to the performance of the [prime] contract." (Emphasis added; internal quotation marks omitted.) Close reasoned that the consulting agreement created an agency relationship between the state and itself. Therefore, Brunalli, pursu-

ant to the standard specifications, was obligated to indemnify Close as an agent of the state, because Close was a third party beneficiary of the prime contract. The remainder of the amended counterclaim largely repeated the allegations from the original counterclaim. Brunalli did not oppose the request for leave to amend the counterclaim; hence, the amended counterclaim became the operative pleading during the pendency of the motion for summary judgment. See *Darling* v. *Waterford*, 7 Conn. App. 485, 487, 508 A.2d 839 (1986) (if opponent fails to object to proposed amendment within fifteen days, amendment is automatically allowed, and "[t]he trial court ha[s] no discretion, at that time, to deny the request, absent extraordinary circumstances").

On July 10, 2013, Close filed its objection to Brunalli's motion for summary judgment, claiming that Brunalli had failed to establish that there were no genuine issues of material fact as to whether Close's amended counterclaim was barred by the exclusivity provision of the act. It argued that "Brunalli's motion for summary judgment ignore[d] the parties' contractual relationships, which create[d], at least, a question of fact as to whether an independent legal duty existed between [Close] and Brunalli." Specifically, Close directed the court's attention to the amended counterclaim, in which Close alleged that "it [was] the third party beneficiary of the prime contract's indemnification provision by virtue of an agency relationship created by the consulting agreement." According to Close, because the term "agent" in the subject indemnity provision was undefined, and Close and the state "understood" that Close was an agent of the state, "whether [Close was] a third party beneficiary of the prime contract by virtue of an agency relationship with the state [was], at least, a question of material fact that a jury must determine."

In support of its objection to Brunalli's motion for summary judgment, Close appended an affidavit from Thomas M. Ryan, its director of engineering. Ryan averred that he not only had personal knowledge of the consulting agreement between Close and the state, but also that he had personal knowledge of the work Close performed, pursuant to the consulting agreement, in connection with the Salem Bridge project. He also averred that "[d]uring the course of [the] contractual relationship with the [s]tate, [Close] was understood by both the [s]tate and [Close] to be the [s]tate's agent." Close did not provide any other affidavits and did not submit certified copies of the consulting agreement referred to in Ryan's affidavit or the prime contract.[7]

The court heard oral argument on November 6, 2014, on Brunalli's motion for summary judgment. On January 2, 2015, the court issued its memorandum of decision in which it granted Brunalli's motion. The court noted that the only exhibit Close submitted was Ryan's affida-

vit, and the court highlighted the fact that Close did not submit a copy of the consulting agreement referenced in Ryan's affidavit. The court determined that Ryan's statement that "[d]uring the course of the contractual relationship with the [s]tate, [Close] was understood by both the [s]tate and [Close] to be the [s]tate's agent," was "only a conclusion, without an evidentiary basis." Therefore, the court found that Close "ha[d] not presented evidence that Brunalli had an independent legal duty to [Close]," and that "Brunalli ha[d] presented evidence that there was no contractual relationship creating an independent legal duty to [Close], which [Close] ha[d] not disputed . . . ." This appeal followed.

The dispositive issue in this appeal is whether Brunalli's motion for summary judgment adequately demonstrated that there were no genuine issues of material fact, specifically as to Close's allegation in its amended counterclaim that it was an agent of the state and, thus, a third party beneficiary of the prime contract's indemnification provision. Close argues that Brunalli, as the moving party, failed to meet its threshold burden because Needham's affidavit averring that Close and Brunalli have never entered into a contractual relationship was "not dispositive as to whether Brunalli owed [Close] an independent legal duty to indemnify." Close does not dispute Needham's assertion. Rather, Close contends that the court improperly granted Brunalli's motion for summary judgment because Brunalli failed to submit any evidence countering Close's allegations that (1) it was an agent of the state, (2) pursuant to the prime contract, Brunalli was duty bound to perform its work with due care, and (3) Close was a third party beneficiary of the prime contract.

Brunalli counters that "even as framed in [Close's] amended counterclaim," its motion for summary judgment "made the required showing that there [was] no genuine issue of material fact that it did not have an independent legal duty to indemnify [Close]; therefore, [Close's] claims were barred by the exclusivity provision of the [act] . . . ." Furthermore, Brunalli argues that the lack of an independent legal duty negated Close's allegation that Brunalli "had an obligation to indemnify [Close] based upon a duty to perform its work with due care." After reviewing the record, we conclude that Brunalli failed to demonstrate that there was no genuine issue of material fact because it submitted no evidence addressing Close's allegation in its amended counterclaim that it was an agent of the state and, therefore, it was a third party beneficiary of the prime contract's indemnification provision.

We set forth our well established standard of review on appeal following a trial court's granting of a motion for summary judgment. Practice Book § 17-49 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted

show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." As an appellate tribunal, "[w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts. . . . A material fact is a fact which will make a difference in the result of the case. . . . [I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist." (Internal quotation marks omitted.) *Lathrop* v. *Malcolm Pirnie, Inc.*, 131 Conn. App. 204, 208, 25 A.3d 740 (2011).

"The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . Our review of the decision to grant a motion for summary judgment is plenary. . . . We therefore must decide whether the court's conclusions were legally and logically correct and find support in the record." (Internal quotation marks omitted.) *Mott* v. *Wal-Mart Stores East, LP*, 139 Conn. App. 618, 624–25, 57 A.3d 391 (2012).

The following relevant legal principles guide our analysis. "It is frequently stated in Connecticut's case law that, pursuant to Practice Book §§ 17-45 and 17-46, a party opposing a summary judgment motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [T]ypically [d]emonstrating a genuine issue requires a showing of evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred. . . .

"An important exception exists, however, to the general rule that a party opposing summary judgment must provide evidentiary support for its opposition, and that exception has been articulated in our jurisprudence with less frequency than has the general rule. *On a motion by [the] defendant for summary judgment the burden is on [the] defendant to negate each claim as framed by the complaint* . . . . It necessarily follows that it is only [o]nce [the] defendant's burden in establishing his entitlement to summary judgment is met [that] the burden shifts to [the] plaintiff to show that a genuine issue of fact exists justifying a trial. . . .

Accordingly, [w]*hen documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue.*" (Citation omitted; emphasis added; footnote omitted; internal quotation marks omitted.) Id., 625–27.

In this appeal, Brunalli had the initial burden of showing the absence of any genuine issue of material fact raised by Close's amended counterclaim under applicable principles of workers' compensation law, entitling it to judgment as a matter of law. It is undisputed that the exclusivity provision of the act, § 31-284 (a), provides, for most purposes, that "workers' compensation payments are the exclusive source of remedy against an injured employee's employer. . . . In view of the exclusivity of workers' compensation relief, indemnity claims against employers as joint tortfeasors warrant the special additional limitation of an independent legal relationship." (Citations omitted.) *Skuzinski* v. *Bouchard Fuels, Inc.*, 240 Conn. 694, 699, 694 A.2d 788 (1997). *Ferryman* v. *Groton*, 212 Conn. 138, 561 A.2d 432 (1989), is illuminating on this point.

In *Ferryman*, our Supreme Court stated that "[w]hen the third party, in a suit by the employee, seeks recovery over against a contributorily negligent employer, contribution [or indemnification][8] is ordinarily denied on the ground that the employer cannot be said to be jointly liable in tort to the employee because of the operation of the exclusive-remedy clause. *But if the employer can be said to have breached an independent duty toward the third party, or if there is a basis for finding an implied promise of indemnity, recovery in the form of indemnity may be allowed.* The right to indemnity is clear when the obligation springs from a separate contractual relation, such as an employer-tenant's express agreement to hold the third-party landlord harmless, or a bailee's obligation to indemnify a bailor, or a contractor's obligation to perform his work with due care; but when the indemnity claim rests upon the theory that a primary wrongdoer impliedly promises to indemnify a secondary wrongdoer, the great majority of jurisdictions disallow this claim. 2A A. Larson, [Workmen's Compensation Law] § 76." (Emphasis added; footnote in original; internal quotation marks omitted.) Id., 144–45. Thus, for Brunalli to have an obligation to indemnify Close, it must be clear that Brunalli either breached an independent duty it owed to Close through an express agreement, or that there is a basis to find an implied promise of indemnity, and that this obligation arose "from a separate contractual relation." (Internal quotation marks omitted.) Id., 144.

In its amended counterclaim, Close alleged that Brunalli had a contractual agreement with the state, which incorporated by reference the standard specifications.

Close also alleged that the specifications obligated Brunalli to " 'indemnify and save harmless' " *agents of the state*. Moreover, Close alleged that it had entered into a consulting agreement with the state in 2008, which also incorporated by reference the standard specifications, and that that agreement created an agency relationship between the state and Close. Thus, as alleged in the amended counterclaim, because Close was an agent of the state, it was entitled "to the indemnification provisions of the prime contract as an intended third party beneficiary . . . ."

With its motion for summary judgment, Brunalli submitted no evidence that addressed Close's factual allegation that it was an agent of the state and that it was a third party beneficiary of the prime contract's indemnification provision. To be sure, Brunalli and Close had not entered into a contractual relationship, as the appended affidavit avers. Close did not dispute this assertion. Rather, Close contended that, in essence, an implied promise of indemnity flowed from the prime contract to it because it was an agent of the state and entitled to indemnification. Brunalli, however, did not demonstrate in its motion for summary judgment and accompanying evidence that there was no issue of material fact that Close was not an agent of the state and was not a third party beneficiary of the prime contract's indemnification provision. Indeed, the affidavit supporting Brunalli's motion for summary judgment did not address Close's allegation that it was an agent of the state and thus entitled to indemnification. Therefore, as the nonmoving party, Close was under no obligation to submit documents establishing the existence of this issue. See *Mott* v. *Wal-Mart Stores East*, *LP*, supra, 139 Conn. App. 627; see also id., 631–32 (where moving party's evidence submitted in support of motion for summary judgment failed to negate factual claim raised by nonmoving party's complaint, burden of proof did not shift to nonmoving party, and failure to file opposing affidavit or other supporting documents with opposition to summary judgment was not flaw fatal to objection). Hence, the affidavit provided by Brunalli "did not even purport to show the nonexistence of all the issues of fact raised by the [amended counterclaim] . . . ." (Internal quotation marks omitted.) *Fogarty* v. *Rashaw*, 193 Conn. 442, 445, 476 A.2d 582 (1984). Consequently, because that affidavit failed to address the factual issue of whether Close was an agent of the state and was entitled to indemnification, a genuine issue of material fact remained that could not be determined on summary judgment. See *Wesley* v. *Schaller Subaru, Inc.*, 277 Conn. 526, 543, 893 A.2d 389 (2006) ("[t]he existence of an agency relationship is a question of fact" [internal quotation marks omitted]).

"A party seeking summary judgment has the considerable burden of demonstrating the absence of any genuine issue of material fact because litigants ordinarily

have a constitutional right to have issues of fact decided by a [trier of fact] . . . ." (Internal quotation marks omitted.) *Midland Funding, LLC* v. *Mitchell-James*, 163 Conn. App. 648, 654, 137 A.3d 1 (2016). In the present case, the court did not hold Brunalli to the strict standard of "showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." (Internal quotation marks omitted.) *D.H.R. Construction Co.* v. *Donnelly*, 180 Conn. 430, 434, 429 A.2d 908 (1980). Rather, the court focused on the fact that no contractual relationship existed between Brunalli and Close and did not address how Brunalli's motion for summary judgment and accompanying affidavit negated Close's claim in its amended counterclaim that it was an agent of the state and entitled to indemnification.

Also, even if we assume, without deciding, that the court was correct in concluding that Ryan's assertions in his affidavit were conclusory and without an evidentiary basis because Close did not submit the consulting agreement, the court, nevertheless, improperly granted summary judgment. See *Mott* v. *Wal-Mart Stores East, LP*, supra, 139 Conn. App. 626 ("only [o]nce [the] defendant's burden in establishing his entitlement to summary judgment is met [that] the burden shifts to [the] plaintiff to show that a genuine issue of fact exists justifying a trial"). In failing to negate Close's claim, as framed in its amended counterclaim, that it was an agent of the state and that it was a third party beneficiary of the prime contract's indemnification provision, Brunalli failed to meet its burden of establishing the absence of a genuine issue of material fact. See id., 628 ("[t]o prevail on a motion for summary judgment . . . the [counterclaim] defendant had an obligation to negate the factual claims as framed by the [amended counterclaim]"). Thus, we conclude that the court erred in concluding that Brunalli was entitled to summary judgment as a matter of law.[9]

The judgment is reversed and the case is remanded with direction to deny Brunalli's motion for summary judgment as to Close's counterclaim and for further proceedings according to law.

In this opinion the other judges concurred.

[1] Close and Brunalli are the only parties to Close's counterclaim. As a result, the remaining plaintiffs and defendants are not parties to this appeal.

[2] Because our resolution of Close's first claim is dispositive of the appeal, we do not reach the second claim.

[3] According to Close, it served as the state's consulting liaison engineer for the Salem Bridge project.

[4] According to Martin, he was a registered professional engineer in Connecticut. In his capacity as a consulting engineer, Martin was engaged by Hartland to assist in the Salem Bridge project. Specifically, "[t]he scope of [his] engagement . . . was limited to engineering, preparation and wet-stamping (with a [r]egistered [p]rofessional [e]ngineering seal) design documents in accordance with contract documents and project specifications . . . ." We note that Martin is not a party to this appeal.

[5] General Statutes § 31-284 (a) provides in relevant part: "An employer who complies with the requirements of subsection (b) of this section shall

not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment . . . . All rights and claims between an employer who complies with the requirements of subsection (b) of this section and employees . . . arising out of personal injury . . . sustained in the course of employment are abolished other than rights and claims given by this chapter, provided nothing in this section shall prohibit any employee from securing, by agreement with his employer, additional compensation from his employer for the injury or from enforcing any agreement for additional compensation."

[6] Practice Book § 10-60 (a) provides in relevant part: "[A] party may amend his or her pleadings or other parts of the record or proceedings at any time subsequent to that stated in the preceding section in the following manner . . . (3) By filing a request for leave to file such amendment, with the amendment appended, after service upon each party . . . and with proof of service endorsed thereon. If no objection thereto has been filed by any party within fifteen days from the date of the filing of said request, the amendment shall be deemed to have been filed by consent of the adverse party. . . ."

[7] Brunalli's motion for summary judgment was directed at the counterclaim dated May 10, 2012, and was not amended to address the amended counterclaim. Nonetheless, the court could determine whether Brunalli was entitled to summary judgment as it pertained to Close's amended counterclaim. See Practice Book § 10-61 ("[i]f the adverse party fails to plead further, pleadings already filed by the adverse party shall be regarded as applicable so far as possible to the amended pleading").

[8] "See *Malerba* v. *Cessna Aircraft Co.*, 210 Conn. 189, 194, 554 A.2d 287 (1989)." *Ferryman* v. *Groton*, supra, 212 Conn. 144 n.5.

[9] This court's reasoning in *Mott* v. *Wal-Mart Stores East*, *LP*, supra, 139 Conn. App. 618, illustrates why it was incumbent on Brunalli to negate Close's claim in its amended counterclaim that it was an agent of the state and that it was a third party beneficiary of the prime contract's indemnification provision. In that case, the plaintiff initiated a negligence claim against the defendant after he allegedly slipped and fell in the defendant's parking lot. Id., 620. The defendant filed its answer denying all the allegations and asserted a special defense of contributory negligence. Id. Subsequently, the defendant moved for summary judgment, arguing "that it was 'readily evident' that the plaintiff could not demonstrate that the defendant had had actual or constructive notice of the spot of ice that the plaintiff allegedly fell on, and, because there was no genuine issue of material fact as to whether the defendant had actual or constructive notice of that specific defect, it was entitled to judgment as a matter of law . . . ." Id., 621. In support, the defendant provided, inter alia, copies of the plaintiff's notice of the filing of his revised complaint and a transcript of a portion of the plaintiff's deposition testimony. Id. The plaintiff filed an objection to the motion for summary judgment with a memorandum of law in which he argued that the defendant had actual or constructive notice. Id., 621–22. The plaintiff asserted that he had evidence to support this argument, but he did not provide an affidavit or other documentary evidence in support of those assertions. Id., 622. Ultimately, the trial court concluded that "[t]he materials submitted by the defendant indicate[d] that it had no notice of the alleged defect prior to the fall. The plaintiff's objection claims otherwise, but the problem is that the plaintiff has utterly failed to comply with [Practice Book] § 17-46 . . . . Given this complete failure to comply with the requirements of the rules of practice, the plaintiff's factual assertions cannot be considered. Under these circumstances, the motion for summary judgment must be granted." (Internal quotation marks omitted.) Id., 623.

This court in *Mott* reversed the summary judgment because the defendant had not met its initial burden of establishing the absence of a genuine issue of material fact regarding notice by not negating the factual claims as framed by the plaintiff's complaint. Id., 628. Specifically, we stated that "it was incumbent on the defendant to provide the court with more than its belief that it was 'readily evident' that the plaintiff ultimately would be unable to meet his obligation at trial to produce evidence to prove that the defendant had actual or constructive notice of the alleged defect. In other words, before the plaintiff had acquired any obligation to produce evidence that would tend to show that the defendant, in fact, had notice of the defect, the defendant had the burden of producing evidentiary support for its assertion that its lack of notice was an undisputed fact." Id. The defendant in *Mott* failed to produce an affidavit averring that it lacked knowledge of the defect at issue prior to the plaintiff's fall. Id., 631. Moreover, the deposition

testimony from the plaintiff that the defendant relied upon in its motion for summary judgment did not negate the issue of notice. Id. Thus, because the defendant did not meet its initial evidentiary burden, the plaintiff was not required to show that a genuine of issue of fact existed, and he was entitled to a denial of the defendant's motion for summary judgment. Id., 632.

———————————————————