******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CUONG KIM TRAN *v.* MARK ALLEN WOODWORTH,
COADMINISTRATOR (ESTATE OF NANCY S.
WOODWORTH), ET AL.
(AC 46193)

Suarez, Seeley and Vertefeuille, Js.

*Syllabus*

The plaintiff sought to recover damages for, inter alia, personal injuries he
sustained as a result of a head-on motor vehicle collision that resulted
in the death of the defendants' decedent. The plaintiff alleged that the
decedent's negligence in operating her motor vehicle caused her vehicle
to cross over the double yellow lines into his lane of travel, causing the
collision. The defendants filed requests for admissions, which requested
that the plaintiff admit, inter alia, that he was distracted from the road-
way immediately prior to the collision and that he was unaware of the
existence of any evidence to contest that the collision occurred in the
decedent's northbound lane of travel. As a result of the plaintiff's failure
to respond to the requests, the requested admissions were deemed
admitted by the plaintiff pursuant to the rule of practice (§ 13-23). The
defendants thereafter filed a motion for summary judgment, claiming
that they were entitled to judgment as a matter of law and that, on the
basis of the plaintiff's admissions, it was uncontested that he, in his
distraction, had driven from his southbound lane of travel into the
northbound lane and, thus, caused the collision. The defendants also
submitted an affidavit from H, an engineer and accident reconstruction-
ist, attesting that he had reviewed police photographs from the scene
of the collision and that that information conclusively established that
the plaintiff's vehicle had crossed from the southbound lane into the
northbound lane and collided with the decedent's vehicle. The plaintiff
filed an opposition to the defendants' motion for summary judgment,
to which he appended a signed, written statement of W, the only eyewit-
ness to the collision. W's statement was taken by a police officer who
had responded to the scene of the accident. In his statement, W recalled,
inter alia, that he had been driving behind the plaintiff in the northbound
lane of travel and had witnessed the decedent's vehicle drift from the
southbound lane and collide with the plaintiff's vehicle. The trial court
granted the defendants' motion for summary judgment, reasoning that,
because the plaintiff relied on an inconsistent statement from an eyewit-
ness as to his direction of travel when the collision occurred and that
the facts deemed admitted by the plaintiff demonstrated that the collision
occurred in the decedent's lane of travel, no genuine issue of material
fact existed concerning the location of the collision. The court deter-
mined that the plaintiff had failed to meet his burden in opposing sum-
mary judgment by submitting countervailing evidence to demonstrate

the existence of a genuine issue of material fact. On the plaintiff's appeal to this court, *held* that the trial court improperly rendered summary judgment for the defendants: the evidence on which the defendants relied in support of their motion did not resolve the factual allegations of negligence contested in the pleadings, as the plaintiff's admissions that he was momentarily distracted just prior to the collision and was not aware of any evidence contesting that the collision occurred in the northbound lane did not resolve or address the factual issues or allegations raised in the complaint concerning the decedent's conduct prior to the collision, which could have been a significant factor in contributing to the collision and the extent of the plaintiff's injuries; moreover, H's affidavit also was insufficient to establish a genuine issue of any material fact as to the allegations of negligence, as it was not based on personal observations of the collision or knowledge about how it occurred and it did not address whether any of the decedent's conduct caused or contributed to the collision; furthermore, although the defendants did not meet their burden in demonstrating the absence of a genuine issue of material fact concerning the allegations of negligence in the complaint and the burden of proof never shifted to the plaintiff, even if this court were to conclude that the defendants met their initial burden, W's sworn statement was sufficient to establish the existence of a genuine issue of material fact concerning the cause of the collision to preclude summary judgment, as it served as direct evidence concerning the circumstances surrounding the collision, and any inconsistencies in his statement concerned factual matters to be determined by a jury during a trial; accordingly, this court reversed the judgment of the trial court and remanded the case for further proceedings in accordance with its opinion.

Argued January 18—officially released May 21, 2024

*Procedural History*

Action to recover damages for, inter alia, personal injuries sustained as a result of the alleged negligence of the defendants' decedent, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Baio, J.*, granted the defendants' motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Reversed*; *further proceedings*.

*David S. Migliore*, for the appellant (plaintiff).

*Philip T. Newbury, Jr.*, with whom, on the brief, was *William F. Corrigan*, for the appellees (defendants).

*Opinion*

SEELEY, J. The plaintiff, Cuong Kim Tran, appeals from the summary judgment rendered by the trial court in favor of the defendants, Mark Allen Woodworth and Jennifer Woodworth Sulc, coadministrators of the estate of the decedent, Nancy S. Woodworth. On appeal, the plaintiff claims that the trial court improperly granted the defendants' motion for summary judgment and determined that the defendants were entitled to judgment as a matter of law as to the plaintiff's complaint alleging negligence because (1) the documents on which the defendants relied in support of their motion did not demonstrate the absence of any genuine issue of material fact as to the allegations of negligence in the complaint and (2) the plaintiff submitted countervailing evidence demonstrating the existence of a genuine issue of material fact that precluded summary judgment. We agree with the plaintiff and, therefore, reverse the summary judgment rendered in favor of the defendants and remand the case for further proceedings.

The following facts, as alleged in the complaint and viewed in the light most favorable to the plaintiff as the nonmoving party, or as otherwise undisputed in the record, and procedural history are relevant to our resolution of this appeal. On October 27, 2017, a motor vehicle accident occurred on Route 17 in the town of Glastonbury, at approximately 10:40 a.m. The plaintiff was operating a light blue 2005 Acura MDX sport utility vehicle (Acura) that was traveling in the southbound lane of Route 17. At the same time, the decedent was operating a red 2013 Buick Verano sedan (Buick) and was traveling in the northbound lane of Route 17. The plaintiff alleged that, "as [his] vehicle was proceeding southbound in his lane of travel, the decedent's vehicle, suddenly and without warning, left the northbound lane of travel and crossed over the double yellow lines into

the plaintiff's lane of travel, causing a violent head-on collision.''

Shortly after the accident, state police and fire personnel arrived at the scene. The decedent died as a result of the accident, and the plaintiff, who was rendered unconscious and allegedly suffered severe bodily injuries, is unable to recall any details concerning the collision. Following the accident, the defendants were appointed as coadministrators of the decedent's estate.

On October 28, 2019, the plaintiff commenced this action. In his complaint, the plaintiff alleged a single count of negligence, namely, that the decedent was negligent in operating her motor vehicle and that the decedent's negligence caused the head-on collision, resulting in the injuries and losses he sustained.[1] Specifically, the plaintiff alleged that the violent collision and the plaintiff's injuries and losses were caused by the carelessness and/or negligence of the decedent in one or more of the following ways: "In that she failed to drive on the right side of the road in violation of . . . General Statutes [§] 14-230 . . . she failed to maintain her lane by traveling over the double yellow line dividing the roadway in violation of . . . General Statutes [§] 14-237 . . . she was traveling unreasonably fast in violation of . . . General Statutes [§] 14-218a . . . she failed to keep her vehicle under proper and reasonable control . . . she failed to keep a proper and reasonable lookout for other motor vehicles on the roadway, specifically the motor vehicle operated by the plaintiff, which was approaching her motor vehicle . . . she failed to

---

[1] The plaintiff alleged that he has incurred expenses for medical care, including costs for the ambulance, the hospital and physical rehabilitation care, X-rays, MRIs, CT scans, physician's fees, surgical fees, and medication, and that he may incur additional medical expenses in the future. Additionally, the plaintiff alleged that, as a direct and proximate result of the collision, his vehicle was destroyed, he suffered the loss of his property and the loss of use of his vehicle, and he has incurred storage fees and costs.

apply her brakes in time to avoid the collision, although by a proper and reasonable exercise of her faculties, she could and should have done so; and . . . she failed to turn her motor vehicle to the left or to the right so as to avoid a collision, although by a proper and reasonable exercise of her faculties she could and should have done so." On June 11, 2020, the defendants filed an answer to the complaint denying those allegations and asserted as a special defense that the plaintiff's injuries were caused by his own negligence. On the same day, the plaintiff replied to the defendants' answer and denied every allegation contained in the special defense.

On June 9, 2021, the defendants served the plaintiff with requests for admissions. In their request for admissions, filed pursuant to Practice Book § 13-22,[2] the defendants requested that the plaintiff admit the truth to the following matters: "(1) At the time of the subject accident, the plaintiff . . . was driving south on Route 17 in Glastonbury . . . (2) Immediately prior to the subject accident the plaintiff . . . was momentarily distracted from the roadway when he saw something off the roadway . . . (3) The plaintiff . . . did not see the [decedent's] car immediately prior to the subject accident . . . (4) The plaintiff . . . did not immediately know what his car came in contact with in the accident . . . (5) The attached is a fair and accurate copy of the written statement the plaintiff . . . gave to the Connecticut State Police concerning the subject

---

[2] Practice Book § 13-22 (a) provides in relevant part: "A party may serve in accordance with Sections 10-12 through 10-17 upon any other party a written request, which may be in electronic format, for the admission, for purposes of the pending action only, of the truth of any matters relevant to the subject matter of the pending action set forth in the request that relate to statements or opinions of fact or of the application of law to fact, including the existence, due execution and genuineness of any documents described in the request. . . ."

accident . . . (6) The plaintiff . . . is aware of no evidence to contest that the decedent . . . was operating her car northbound on Route 17 in Glastonbury . . . at the time of the accident . . . [and] (7) The plaintiff . . . is aware of no evidence to contest that the subject accident occurred in the northbound lane of travel on Route 17 in Glastonbury . . . .” The plaintiff never responded to the request for admissions.

Pursuant to Practice Book §13-23 (a), “[e]ach matter of which an admission is requested is admitted unless, within thirty days after the filing of the notice required by Section 13-22 (b), or within such shorter or longer time as the judicial authority may allow, the party to whom the request is directed files and serves upon the party requesting the admission a written answer or objection addressed to the matter . . . .” “[A] failure to respond timely to a request for admissions means that the matters sought to be answered were conclusively admitted.” (Internal quotations marks omitted.) *HM Construction & Painting, LLC* v. *32 Wilmot Place, LLC*, 222 Conn. App. 261, 269, 305 A.3d 302 (2023); *East Haven Builders Supply, Inc.* v. *Fanton*, 80 Conn. App. 734, 744, 837 A.2d 866 (2004); see also Practice Book § 13-24. Accordingly, by operation of law, the requested admissions were deemed admitted by the plaintiff as a result of his failure to respond to them.[3]

---

[3] “It has long been held that ‘[f]actual allegations contained in pleadings upon which the case is tried are considered judicial admissions and hence irrefutable as long as they remain in the case. . . . An admission in pleading dispenses with proof, and is equivalent to proof.’ . . . *Provencher* v. *Enfield*, 284 Conn. 772, 792, 936 A.2d 625 (2007). ‘A judicial admission dispenses with the production of evidence by the opposing party as to the fact admitted, and is conclusive upon the party making it. . . . [The] admission in a plea or answer is binding on the party making it, and may be viewed as a conclusive or judicial admission. . . . It is axiomatic that the parties are bound by their pleadings.’ . . . *Industrial Mold & Tool, Inc.* v. *Zaleski*, 146 Conn. App. 609, 614, 78 A.3d 218 (2013) . . . . Similarly, ‘[a] party’s response to a request for admissions is binding as a judicial admission unless the judicial authority permits withdrawal or amendment. . . . [A] failure to respond timely to a request for admissions means that the matters

On September 23, 2022, pursuant to Practice Book § 17-44, the defendants filed a motion for summary judgment as to the plaintiff's complaint, in which they claimed that no genuine issues of material fact existed and that they were entitled to judgment as a matter of law. Specifically, the defendants, relying on the plaintiff's admissions that he was distracted prior to the accident and that the accident occurred in the northbound lane, asserted in their memorandum of law in support of their motion for summary judgment that it was "uncontested that the plaintiff, in his distraction, suddenly and without warning crossed the double yellow lines and killed the . . . decedent." Thus, they argued that the plaintiff could not present any evidence to establish the allegations of negligence in the complaint. In support of the motion for summary judgment, the defendants attached their request for admissions and included an affidavit of William M. Howerton, an engineer and accident reconstructionist. In the affidavit, Howerton attested to the following: "As to the subject accident of October 17, 2017[4] on Route 17 in Glastonbury . . . I have reviewed the police photographs, and the location of the gouge marks, debris and liquid spray on the road, and the final resting places of the vehicles involved establish without a doubt that the southbound vehicle operated by [the plaintiff] crossed the double yellow lines and struck head-on the vehicle operated northbound by [the decedent], operating in the northbound lane." (Footnote added.)

On December 12, 2022, the parties appeared remotely before the court, *Baio, J.*, to present argument concerning the defendants' motion for summary judgment. The

---

sought to be answered were conclusively admitted.' " (Citation omitted.) *HM Construction & Painting, LLC* v. *32 Wilmot Place, LLC*, supra, 222 Conn. App. 268–69.

[4] We note that the affidavit incorrectly states the accident occurred on October 17, 2017, when it occurred on October 27, 2017.

same day, prior to argument, the plaintiff filed a memorandum of law in opposition to the defendants' motion for summary judgment,[5] in which he argued that there was a genuine issue of material fact concerning the decedent's alleged negligence and that he could establish that the decedent was negligent in one of the ways alleged in his complaint. Moreover, in support of his opposition to the motion for summary judgment, the plaintiff submitted a copy of the signed written statement of the only eyewitness to the accident, Jason D. Watson.[6] In his written statement, Watson recounted the details leading up to the crash and the aftermath and acknowledged that his written statement was true and made to the best of his knowledge and belief. Specifically, Watson recalled that he was travelling *northbound* on Route 17 approximately 100 feet behind a gray[7] Acura and that there was a red Buick coming from the opposite direction.[8] Watson further recalled that, prior to when the accident occurred, when the red Buick was approximately 125 to 150 feet away from his vehicle, he saw the red Buick drift into his lane of

---

[5] Although the objection was not timely filed pursuant to Practice Book § 17-45 (b), the defendants did not object to the court considering the objection, and the court provided the defendants with the opportunity to file a reply memorandum. The objection was, thus, allowed, and the defendants' counsel filed a reply memorandum.

[6] Watson's statement was taken by Trooper Andrew Crook, who had responded to the scene of the accident. Crook completed the written statement by signing that he had taken the oath of the eyewitness, Watson, on October 27, 2017, the same day the statement was provided. In that sworn statement, Watson provided Crook with his date of birth and his residential address and acknowledged that, by signing the written statement, he was making the statement without fear, threat or promise and that he had been advised that it is a crime to make any statements that are untrue and intended to mislead a public servant in the performance of his official function.

[7] Although Watson described the Acura as being gray in color, the color of the Acura driven by the plaintiff was light blue.

[8] We note that there is an inconsistency in Watson's statement as to his direction of travel. Watson claims to have been traveling in a northbound direction behind the plaintiff's Acura. The plaintiff, however, was traveling in the southbound lane of Route 17 at the time of the accident.

travel. According to Watson, the driver of the red Buick attempted to correct herself but it was too late, and the vehicles collided head-on. After the collision, Watson attempted to check on the well-being of both drivers.[9]

On December 20, 2022, the defendants filed a reply to the plaintiff's objection to the motion for summary judgment. In their reply, the defendants argued that the evidence submitted by the plaintiff did not establish the existence of a genuine issue of material fact.

Thereafter, on January 5, 2023, the court issued a memorandum of decision granting the defendants' motion for summary judgment. The court reasoned that the plaintiff's objection to the motion for summary judgment relied on an inconsistent statement from an eyewitness as to the direction he was traveling when the accident occurred and that the facts deemed admitted by the plaintiff—that the decedent was traveling in the northbound lane and the accident occurred in the northbound lane—supported a determination that no genuine issue of material fact existed concerning the location of the accident. Further, the court determined that the plaintiff failed to meet his burden in opposing summary

---

[9] Watson also asserted the following in his statement: "After the vehicles collided the Acura ended up in the southbound lane and the Buick ended up in the northbound lane. At this time, I immediately pulled over to help. I approached the Acura and could see the male operator was trapped in the vehicle but was still alive and able to talk. The male operator was the only person in the Acura. I then ran over to the Buick. The Buick was being driven by a female who was unconscious and also trapped in the vehicle. The female was the only person in the Buick. I was not able to gain access to the Buick, so I returned to the Acura. The Acura . . . began to smoke so I feared that it was going to catch on fire. I spoke with the operator of the Acura and he stated that his back was hurting and he was having trouble breathing. I helped lay the operator of the Acura across the driver and passenger seats to make him more comfortable. The driver of the Acura was fading in and out of consciousness so I continued to talk to him. There was a female driver behind me who had also stopped and called for help as I was speaking with the operator of the Acura. Police and fire [personnel] arrived on scene shortly after she had called."

judgment by submitting countervailing evidence to demonstrate the existence of a genuine issue of material fact. From the judgment rendered thereon, this appeal followed.

On appeal, the plaintiff claims that the court improperly granted the defendants' motion for summary judgment. Specifically, the plaintiff claims that (1) the evidence and affidavit on which the defendants relied in support of their motion for summary judgment did not demonstrate the absence of any genuine issue of material fact as to the allegations of negligence in the complaint and (2) the court improperly determined that the plaintiff failed to submit countervailing evidence demonstrating the existence of a genuine issue of material fact. We agree with both of the plaintiff's claims.

Before addressing those claims, we set forth our applicable standard of review and the principles that guide our analysis of an appeal from a decision granting a motion for summary judgment. "The standard of review of motions for summary judgment is well settled. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Abendroth* v. *Moffo*, 156 Conn. App. 727, 730–31, 114 A.3d 1224, cert. denied, 317 Conn. 911, 116 A.3d 309 (2015). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The courts are in entire agreement that the moving party . . . has the burden of showing the absence of any genuine issue as to all the material facts . . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving

party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the [nonmoving] party must present evidence that demonstrates the existence of some disputed factual issue. . . . A material fact . . . [is] a fact which will make a difference in the result of a case." (Internal quotation marks omitted.) *Forestier* v. *Bridgeport*, 223 Conn. App. 298, 308, 308 A.3d 102 (2024).

"It is not enough for the moving party merely to assert the absence of any disputed factual issue; the moving party is required to bring forward . . . evidentiary facts, or substantial evidence outside the pleadings to show the absence of any material dispute." (Internal quotation marks omitted.) *Hassiem* v. *O & G Industries, Inc.*, 197 Conn. App. 631, 636, 232 A.3d 1139, cert. denied, 335 Conn. 928, 235 A.3d 525 (2020). "A party seeking summary judgment has the considerable burden of demonstrating the absence of any genuine issue of material fact because litigants ordinarily have a constitutional right to have issues of fact decided by a [jury] . . . ." (Internal quotation marks omitted.) *Mariano* v. *Hartland Building & Restoration Co.*, 168 Conn. App. 768, 781, 148 A.3d 229 (2016).

"On appeal [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Because the trial court rendered judgment for the [defendants] as a matter of law, our review is plenary . . . . " (Internal quotation marks omitted.) *Schimenti Construction Co., LLC* v. *Schimenti*, 217 Conn. App. 224, 234, 288 A.3d 1038 (2023). "In deciding a motion for summary judgment, [i]ssue finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to

decide issues of material fact, but rather to determine whether any such issues exist." (Internal quotation marks omitted.) Id., 234–35.

We next turn to the well settled law of negligence. "[T]he essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." (Internal quotation marks omitted.) *Gonzalez* v. *O & G Industries, Inc.*, 341 Conn. 644, 680, 267 A.3d 766 (2021). In their motion for summary judgment, the defendants focused on the causation element. "To prevail on a negligence claim, a plaintiff must establish that the defendant's conduct legally caused the injuries." (Internal quotation marks omitted.) *Winn* v. *Posades*, 281 Conn. 50, 56, 913 A.2d 407 (2007). "[A] collision alone does not create a rebuttable presumption of negligence and causation." *Rawls* v. *Progressive Northern Ins. Co.*, 310 Conn. 768, 778, 83 A.3d 576 (2014). Our Supreme Court "has recognized that in a case involving an automobile accident, [a] plaintiff cannot merely prove that a collision occurred and then call upon the defendant operator to come forward with evidence that the collision was not a proximate consequence of negligence on his part. Nor is it sufficient for a plaintiff to prove that a defendant operator might have been negligent in a manner which would, or might have been, a proximate cause of the collision. A plaintiff must remove the issues of negligence and proximate cause from the field of conjecture and speculation." (Internal quotation marks omitted.) *Winn* v. *Posades*, supra, 57. Generally, "[i]ssues of negligence are ordinarily not susceptible of summary adjudication but should be resolved by trial in the ordinary manner." (Internal quotation marks omitted.) *Fogarty* v. *Rashaw*, 193 Conn. 442, 446, 476 A.2d 582 (1984).

With these principles in mind, we turn to the plaintiff's first claim, which, in essence, asserts that the defendants did not meet their burden, as the parties

moving for summary judgment, of establishing the absence of a genuine issue of material fact concerning the allegations of negligence in the complaint. In support of their motion for summary judgment, the defendants attached the request for admissions directed to the plaintiff and the affidavit from Howerton. The requested admissions, which were deemed admitted by the plaintiff, include the following: (1) the plaintiff was driving in a southbound direction at the time of the accident; (2) "[i]mmediately prior to the . . . accident the plaintiff . . . was momentarily distracted from the roadway when he saw something off the roadway"; (3) the plaintiff did not see the decedent's vehicle immediately prior to the collision; (4) the plaintiff "did not immediately know what his car came in contact with in the accident"; (5) the plaintiff gave a signed, written statement to the police following the accident; (6) the plaintiff was not aware of any evidence "to contest that the decedent . . . was operating her car northbound on Route 17 in Glastonbury . . . at the time of the accident"; and (7) the plaintiff was not aware of any evidence "to contest that the subject accident occurred in the northbound lane . . . ." In light of these admissions, the defendants argued that there was no issue of material fact that the accident occurred in the northbound lane, the decedent's lane of travel. We do not agree that the plaintiff's admission that he was "aware of no evidence to contest that the subject accident occurred in the northbound lane" conclusively establishes that the accident occurred in the northbound lane. Additionally, even if the accident did occur in the northbound lane of Route 17, we disagree with the defendants' further assertion that the admissions necessarily establish that the plaintiff must have crossed over the double yellow line and been the sole cause of the collision.

Significantly, aside from establishing the direction of travel of the vehicles, that the plaintiff was momentarily

distracted just prior to the collision, and that the plaintiff was not aware of any evidence contesting that the collision occurred in the northbound lane, the admissions do not resolve or address the factual issues and allegations raised in the complaint. The complaint alleges that the decedent was negligent in a number of ways, including by failing to drive on the right side of the road, failing to maintain her lane of travel, traveling unreasonably fast, and failing to keep her vehicle under proper and reasonable control, to keep a proper and reasonable lookout for other motor vehicles on the roadway, to apply her brakes in time to avoid the collision, and to turn her motor vehicle to the left or to the right so as to avoid a collision. The admissions, which do not address any conduct by the decedent prior to the collision, do not in any way resolve or dispel these allegations, any one of which could have been a significant factor in at least contributing to the collision and the extent of the plaintiff's claimed injuries.

We also conclude that Howerton's affidavit is similarly deficient in addressing the allegations of negligence in the complaint. First, notably, Howerton's attestations are not based on personal observations of the collision or knowledge about how it occurred, nor does it appear from his affidavit that he reviewed the police report concerning the accident. His affidavit is also silent regarding the decedent's conduct prior to the collision. We are not persuaded that Howerton, having reviewed only accident photographs and the final location of the vehicles, could determine who caused the accident, as opposed to where it took place. Because Howerton's affidavit addresses only the location of the accident as being in the northbound lane and not whether any actions of the decedent caused or contributed to the collision, his statement is not sufficient to establish the absence of a genuine issue of material fact as to the allegations of negligence in the complaint.

That is, Howerton's conclusion in his affidavit that the plaintiff crossed the double yellow lines and struck the decedent's vehicle in the northbound lane head-on does not conclusively resolve the factual issues of whether the decedent failed to maintain her lane of travel just prior to the collision, whether she was traveling unreasonably fast, or whether she failed to keep her vehicle under proper and reasonable control, to keep a proper and reasonable lookout for other motor vehicles on the roadway, to apply her brakes in time to avoid the collision, and to turn her motor vehicle to the left or to the right so as to avoid a collision.

Our Supreme Court's decision in *Fogarty* v. *Rashaw*, supra, 193 Conn. 442, is directly on point with the present case. In *Fogarty*, the plaintiff brought an action for personal injuries he sustained in a two car collision. Id. The trial court rendered summary judgment in favor of the defendants, which our Supreme Court reversed on appeal. Id., 442–43. In doing so, the court stated that the affidavits on which the defendants relied "contain[ed] no facts to refute the plaintiff's allegations that [the driver of the other vehicle] failed to keep his car under reasonable control, to maintain a proper lookout, and to apply his brakes or turn his vehicle in time to avoid the collision when he had an opportunity to do so." Id., 445. The court, thus, concluded that, "[s]ince these factual issues, contested in the pleadings and not even referred to in the defendants' affidavits, remained unresolved, the court was clearly in error in granting the motion for summary judgment." (Internal quotation marks omitted.) Id. As the court explained: "The affidavit before the court provided an insufficient basis for a summary judgment because it did not resolve 'the mixed question of fact and law' of whether the defendant met the requisite standard of care under the circumstances, particularly those relating to whether he had a reasonable opportunity to avoid the collision."

Id., 446; see also *Plouffe* v. *New York, New Haven & Hartford Railroad Co.*, 160 Conn. 482, 488–91, 280 A.2d 359 (1971) (reversing summary judgment rendered in favor of defendants because affidavits submitted in support of motion for summary judgment did not contest truth of all material allegations in complaint that were denied by defendants); *Rockwell* v. *Quintner*, 96 Conn. App. 221, 222–23, 899 A.2d 738 (because affidavit did not dispose of all issues of material fact raised by complaint, trial court improperly granted defendant's motion for summary judgment), cert. denied, 280 Conn. 917, 908 A.2d 538 (2006).

Similarly, in the present case, the evidence on which the defendants relied in support of their motion for summary judgment did not resolve the factual allegations of negligence contested in the pleadings. For that reason, we conclude that the court improperly rendered summary judgment in favor of the defendants.

Because we conclude that the defendants did not meet their burden in demonstrating the absence of a genuine issue of material fact concerning the allegations of negligence in the complaint, the burden of proof never shifted to the plaintiff. See *Rockwell* v. *Quintner*, supra, 96 Conn. App. 233. Nevertheless, the plaintiff did submit the sworn, written statement of Watson, the sole eyewitness to the accident, in support of his objection to the motion for summary judgment. The court, having determined that the defendants met their initial burden, concluded that the plaintiff failed to submit any countervailing evidence to demonstrate the existence of a genuine issue of material fact, and the plaintiff challenges that determination on appeal. See *Allstate Ins. Co.* v. *Barron*, 269 Conn. 394, 409, 848 A.2d 1165 (2004) (although defendants were not obligated to present documents in support of objection to motion for summary judgment when documents submitted by plaintiff in support of motion did not address crucial factual issue

in case, trial court nonetheless was entitled to consider whether evidence supported claim). Even if we were to conclude that the defendants met their initial burden, Watson's sworn statement[10] was sufficient to establish the existence of a genuine issue of material fact concerning the cause of the accident to preclude summary judgment in this case.

In his sworn statement, Watson stated that he "was traveling approximately 100 feet behind a gray Acura going northbound and there was a red Buick coming from the southbound direction. . . . When the red vehicle was approximately 125 to 150 feet away from me, it drifted into the northbound lane. The red vehicle tried to correct itself, but it was too late, and there was a head-on collision. After the vehicles collided, the Acura ended up in the southbound lane and the Buick ended up in the northbound lane." As we previously pointed out in this opinion, there is an inconsistency

---

[10] We note that, pursuant to Practice Book § 17-45 (a), "[a] motion for summary judgment shall be supported by appropriate documents, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and other supporting documents."

Practice Book § 17-46 further provides in relevant part that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . ."

Thus, Practice Book § 17-46 "sets forth three requirements necessary to permit the consideration of material contained in affidavits submitted in a summary judgment proceeding. The material must: (1) be based on personal knowledge; (2) constitute facts that would be admissible at trial; and (3) affirmatively show that the affiant is competent to testify to the matters stated in the affidavit. . . . Affidavits that fail to meet the criteria of . . . § 17-46 are defective and may not be considered to support the judgment." (Citation omitted; internal quotation marks omitted.) *Atlantic St. Heritage Associates, LLC* v. *Atlantic Realty Co.*, 216 Conn. App. 530, 550, 285 A.3d 1128 (2022). In their appellate brief, the defendants refer to Watson's statement as an affidavit and have not argued that it should not be considered by this court. Because Watson made the statement on the basis of his personal observation of the accident and the statement was signed and sworn to by Watson; see footnote 6 of this opinion; the sworn statement is, in effect, an affidavit and meets the criteria of § 17-46.

in Watson's statement in that he asserts that he was traveling behind the Acura in a northbound direction, but the complaint alleges that the plaintiff, the operator of the Acura, was traveling in a southbound direction, and that fact was judicially admitted by the plaintiff. See footnote 8 of this opinion. At oral argument before the trial court on the motion for summary judgment, the defendants' counsel argued that Watson must have been confused about which car he was following, whereas the plaintiff's counsel argued that Watson was mistaken about his direction of travel. Both parties continue to make those assertions on appeal before this court.

Watson was the sole eyewitness to the collision between the plaintiff's vehicle and that of the decedent. He provided the police with a sworn, written statement on the day of the accident shortly after it occurred. In his statement, he asserted that, just prior to the collision, the driver of the red Buick drifted into the oncoming lane, and that, although the driver tried to correct that maneuver, it was too late, and the Buick and the Acura collided. Watson also described in detail what happened following the collision. We conclude that his sworn statement constitutes sufficient countervailing evidence to demonstrate the existence of an issue of material fact concerning the cause of the collision. The sworn statement of Watson, the sole eyewitness to the accident, serves as direct evidence concerning the circumstances surrounding the accident, especially in light of the fact that the plaintiff has no memory of what occurred. See, e.g., *Rawls* v. *Progressive Northern Ins. Co.*, supra, 310 Conn. 786 n.12 ("eyewitness . . . testimony often serves as more compelling evidence"); *State* v. *Cooper*, 65 Conn. App. 551, 558, 783 A.2d 100 (victim's eyewitness testimony provided compelling direct evidence that defendant was perpetrator), cert. denied, 258 Conn. 940, 786 A.2d 427 (2001). Whether Watson

was mistaken concerning the direction in which he was traveling or about which vehicle he was following concerns a factual matter to be determined by a jury during a trial. See generally *State* v. *Scott*, 191 Conn. App. 315, 328, 214 A.3d 871 (potential unreliability of eyewitness identification testimony concerned weight of evidence and not its admissibility, and it was question for jury), cert. denied, 333 Conn. 917, 216 A.3d 651 (2019). The circumstances of the present case require "a trial [on] the issues of fact in which the trier would be called on to determine the credibility of witnesses and the weight to be given to their testimony. It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given to their testimony can be appraised." (Internal quotation marks omitted.) *Spencer* v. *Good Earth Restaurant Corp.*, 164 Conn. 194, 199, 319 A.2d 403 (1972); see also *Doe* v. *West Hartford*, 328 Conn. 172, 197, 177 A.3d 1128 (2018) ("[w]hen deciding a summary judgment motion, a trial court may not resolve credibility questions raised by affidavits or deposition testimony submitted by the parties").

As our Supreme Court has made clear, "[l]itigants have a constitutional right to have issues of fact decided by a jury. . . . Summary judgment procedure is especially ill-adapted to negligence cases, where, as here, the ultimate issue in contention involves a mixed question of fact and law, and requires the trier of fact to determine whether the standard of care was met in a specific situation. . . . [T]he conclusion of negligence is necessarily one of fact . . . ." (Citation omitted; internal quotation marks omitted.) *Michaud* v. *Gurney*, 168 Conn. 431, 434, 362 A.2d 857 (1975); see also *Busque* v. *Oakwood Farms Sports Center, Inc.*, 80 Conn. App. 603, 607, 836 A.2d 463 (2003), cert. denied, 267 Conn. 919, 841 A.2d 1190 (2004). The present case involves such a situation in which factual issues exist concerning

the collision that preclude summary judgment. Even if the collision occurred in the decedent's lane, that does not eliminate all allegations of negligence in the complaint. For example, Watson asserted that the decedent "tried to correct [her]self, but it was too late," which relates to the plaintiff's allegation in the complaint that the decedent was negligent "[i]n that she failed to keep her vehicle under proper and reasonable control . . . ." As explained by our Supreme Court in *Rawls* v. *Progressive Northern Ins. Co.*, supra, 310 Conn. 779–80, "a plaintiff may show negligence and causation in a vehicle collision case by presenting evidence of the type of collision, the road conditions, the weather, other features of surrounding environment, *the actions of the drivers of any other vehicles involved,* and the extent to which the vehicles involved were damaged." (Emphasis added.) We conclude that Watson's statement creates a genuine issue of material fact concerning the decedent's actions prior to the collision.

Therefore, the trial court improperly granted the defendants' motion for summary judgment.

The judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.